UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HOWARD AYERS,

                              Plaintiff,

            v.

J. ESGROW, Hearing Officer (CHO),
L. FRIOT, SCC,
D. VENETTOZZI, Acting Director (SHU), and
A. PRACK, Director Special Housing Unit,

                              Defendants.
_____

REPORT
and
RECOMMENDATION

12-CV-00656V(F)

APPEARANCES:        HOWARD AYERS, *Pro Se*
                       93-A-2932
                       Bare Hills Correctional Facility
                       Caller Box 20
                       Mallone, New York  12953-0020

                       ERIC T. SCHNEIDERMAN
                       ATTORNEY GENERAL, STATE OF NEW YORK
                       Attorney for Defendants
                       KATHLEEN M. KACZOR
                       Assistant Attorney General, of Counsel
                       350 Main Street
                       Suite 300A
                       Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned on May 25, 2013, by Honorable

Richard J. Arcara for all pretrial matters including preparation of a report and

recommendation on dispositive motions.[1]  The matter is presently before the court on

Plaintiff's motion for partial summary judgment (Doc. No. 38), filed March 23, 2015,

Defendants' cross-motion for partial summary judgment (Doc. No. 47), filed April 30,

2015, Plaintiff's motion for reconsideration (Doc. No. 57), filed August 21, 2015, and

_____

[1] On March 7, 2016, the action was reassigned to Honorable Lawrence J. Vilardo.

Plaintiff's motion for summary judgment and discovery (Doc. No. 59), filed August 24, 2015.[2]

## BACKGROUND

Plaintiff Howard Ayers ("Plaintiff" or "Ayers"), proceeding *pro se*, commenced this action on July 12, 2012, alleging that while incarcerated at Elmira Correctional Facility ("Elmira" or "the correctional facility"), Defendants, all employees of New York State Department of Corrections and Community Supervision ("DOCCS"), violated Plaintiff's civil rights by issuing a false misbehavior report, denying Plaintiff due process at the subsequent disciplinary hearing held on the subject misbehavior report, interfered with Plaintiff's First Amendment right to the free exercise of religion, and retaliated against Plaintiff for filing inmate grievances.  Defendants to this action include Corrections Hearing Officer J. Esgrow ("Esgrow"), Senior Corrections Counselor L. Friot ("Friot"), Acting Special Housing Unit ("SHU") Director D. Venettozzi ("Venettozzi"), and SHU Director A. Prack ("Prack").

In connection with Defendants' motion to dismiss for failure to state a claim filed May 22, 2013 (Doc. No. 13), the undersigned, on September 24, 2014, issued a Report and Recommendation (Doc. No. 24) ("R&R"), recommending dismissal of the Second and Third Claims for failure to state a claim, without prejudice and with leave to file an amended complaint repleading the Second and Third Claims, "both alleging sufficient facts as to cure the deficiencies of the instant complaint and complying with Rule 8(a)'s requirement that a complaint set forth a plain and concise statement of the plaintiff's

---

[2] Although the three pending summary judgment motions are dispositive, while Plaintiff's motion for reconsideration is non-dispositive, all four motions are considered in this combined Report and Recommendation/ Decision and Order is the interests of judicial economy.

claim." R&R at 13. On December 18, 2014, District Judge Arcara adopted the R&R

(Doc. No. 14) ("Order"), stating "Plaintiff is permitted to file an amended complaint in

accordance with the parameters set forth in the Report and Recommendation." Order

at 1-2. On February 6, 2015, Plaintiff filed an untitled document (Doc. No. 34), setting

forth his amended Second and Third Claims ("Amended Claims").

On March 23, 2015, Plaintiff filed his motion for partial summary judgment (Doc.

No. 38) ("Plaintiff's Partial Summary Judgment Motion"), seeking summary judgment on

his First Claim, the Statement of Undisputed Facts (Doc. No. 39) ("Plaintiff's Statement

of Facts"), the Sworn Affidavit in Support of Plaintiff's Motion for Partial Summary

Judgment (Doc. No. 40) ("Plaintiff's Affidavit"), and the Brief in Support of Plaintiff's

Motion for Partial Summary Judgment (Doc. No. 41) ("Plaintiff's Memorandum"). On

March 24, 2015, Defendants filed their answer to the First Claim, asserting no response

to the Amended Claims was required pending the court's screening of such claims

pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e.

(Doc. No. 42) ("Answer"). On April 30, 2015, Defendants filed Defendants' Opposing

Statement in Response to Plaintiff's Statement of Undisputed Facts (Doc. No. 46)

("Defendants' Opposing Statement of Facts"), a cross-motion for partial summary

judgment (Doc. No. 47) ("Defendants' Motion"), attaching Defendants' Memorandum of

Law in Opposition to Plaintiff's Motion for Partial Summary Judgment and in Support of

Defendants' Motion for Summary Judgment (Doc. No. 47-1) ("Defendants'

Memorandum"), Defendants' Statement of Undisputed Facts (Doc. No. 47-2)

("Defendants' Statement of Facts"), the Declaration of James Esgrow (Doc. No. 47-3)

("Esgrow Declaration"), with exhibits A through H ("Esgrow Declaration Exh(s). __"), and

an Appendix of Unpublished Opinions (Doc. No. 47-4).[3]  On July 16, 2015, Plaintiff filed

Plaintiff's Motion under Fed.R.Civ.P. 56(F) [*sic*] Requesting a Stay and/or Denial of

Defendants' Cross-Motion for Summary Judgment on Plaintiff's Second and Third

Amended Claims (Doc. No. 52) ("First Motion to Stay"), filing a similar motion on July

31, 2015 (Doc. No. 53) ("Second Motion to Stay").  By Order filed August 6, 2015 (Doc.

No. 54) ("August 6, 2015 Order"), the undersigned, observed that the stay of

proceedings Plaintiff sought in both the First and Second Motions to Stay was intended

to permit Plaintiff to conduct discovery necessary to avoid summary judgment of his

Amended Second and Third Claims, yet Defendants have moved for summary

judgment only on Plaintiff's First Claim.  August 6, 2015 Order at 1-2.  Accordingly, both

the First and Second Motions to Stay were dismissed as moot.  *Id.* at 2.  On August 14,

2015, Defendants filed Defendants' Reply Memorandum of Law in Further Support of

Defendants' Motion for Summary Judgment (Doc. No. 56) ("Defendants' Reply"),

attaching an Appendix of Unpublished Opinions (Doc. No. 56-1).  On August 21, 2015,

Plaintiff moved for reconsideration of the August 6, 2015 Order (Doc. No. 57)

("Reconsideration Motion").

On August 24, 2015, Plaintiff filed "Plaintiff's Motion under Fed.R.Civ.P. 56(d)(F)

[*sic*]" (Doc. No. 59) ("Plaintiff's Summary Judgment and Discovery Motion"), attaching

Plaintiff's Declaration in Support of His Motion ("Plaintiff's Declaration").  On September

23, 2015, Defendants filed Defendants' Response to Plaintiff's Motion for

Reconsideration (Doc. No. 64) ("Defendants' Reconsideration Response").  On October

2, 2015, Defendants filed Defendants' Memorandum of Law in Opposition to Plaintiff's

---

[3] Defendants' Partial Summary Judgment Memorandum was refiled as Doc. No. 48, attaching the Esgrow
Declaration as Exh. A (Doc. No. 48-1).

Motion "under Fed.R.Civ.P. 56(d)(F)" (Doc. No. 65) ("Defendants' Summary Judgment

and Discovery Motion Response").  On October 5, 2015, Plaintiff filed Pro Se Plaintiff's

Declaration in Opposition to Defendants' Esgrow Declaration and Defendants' Cross-

Motion Claims (Doc. No. 68) ("Plaintiff's Response"), and Plaintiff's Opposition

Statement in Response to Defendants' Statement of Undisputed Facts (Doc. No. 69)

("Plaintiff's Opposing Statement of Facts").  On October 26, 2015, Plaintiff filed Plaintiff's

Opposition to Defendants' Memorandum of Law under Fed.R.Civ.P. 56(D)(F) (Doc. No.

70) ("Plaintiff's Reply Supporting Summary Judgment and Discovery Motion").  Oral

argument was deemed unnecessary.

Based on the following, Plaintiff's Partial Summary Judgment Motion should be

DENIED; Plaintiff's Reconsideration Motion is DISMISSED as moot; Defendants'

Motion should be GRANTED; Plaintiff's Summary Judgment and Discovery Motion

should be DISMISSED as moot; and the Amended Second and Third Claims should be

DISMISSED with prejudice.  The Clerk of the Court should be directed to close the file.


## FACTS[4]

At all times relevant to this action Plaintiff Howard Ayers ("Plaintiff" or "Ayers"),

was in the custody of DOCCS, housed at Elmira Correctional Facility ("Elmira" or "the

correctional facility"), and a member of the Nation of Islam ("NOI").  On June 7, 2011,

Defendant DOCCS Senior Corrections Counselor Lawrence Friot ("Friot"), served on

Plaintiff an Inmate Misbehavior Report ("the Misbehavior Report"),[5] charging Plaintiff

with violating Prison Rules 101.10 (prohibiting an inmate from engaging in, encouraging,

---

[4] Taken from the pleadings and motion papers filed in this action.
[5] Esgrow Declaration Exh. A.

soliciting, or attempting to force another to engage in any sexual act) ("sex offense charge"), and 102.10 (prohibiting an inmate from making any threat, including spoken, written, or by gesture, under any circumstances) ("threat charge").  The Misbehavior Report specifically alleged that Friot, at 9:31 A.M. on June 7, 2011, received from a reliable source confidential information that Plaintiff, forced another Elmira inmate, Jonathan Dilone ("Dilone"), to perform a sexual act.  The alleged incident occurred during Ramadan in August 2010, while Plaintiff and Dilone were in the correctional facility's mess hall preparing meals for Ramadan.  Plaintiff is alleged to have ordered Dilone to perform oral sex on him and, when Dilone refused, Plaintiff allegedly informed Dilone that by joining the NOI, Dilone committed to providing Plaintiff with sexual favors, and that if Dilone would not perform oral sex, Dilone would have to masturbate Plaintiff.  Fearing physical retaliation if he refused, Dilone then masturbated Plaintiff.  After the incident, Dilone stopped attending NOI services and Plaintiff sent Dilone letters telling Dilone he needed to attend NOI services, that Plaintiff is very attracted to Dilone, and gets excited when he dreams about Dilone.  Although Dilone maintained he had quit the NOI, Dilone's name remained on the callout sheet for NOI services, allegedly because Dilone was in fear of his safety given Ayer's position as an influential member and key leader of the NOI.  On June 8, 2011, DOCCS Corrections Officer ("C.O.") J. Dougherty ("Dougherty"), served Plaintiff with a copy of the Misbehavior Report, provided Plaintiff with a Tier III Assistant Selection Form ("inmate assistant form"),[6] from which Plaintiff could choose an assistant in connection with the disciplinary hearing to be held on the charges, and which Plaintiff refused, also refusing to sign the inmate assistant form.  On

---

[6] Esgrow Declaration Exh. C.

June 9, 2011, Plaintiff was moved to the correctional facility's Special Housing Unit ("SHU"), as a result of the charges.

Also on June 9, 2011, a Tier III disciplinary hearing ("the disciplinary hearing"), on the Misbehavior Report was commenced before Defendant DOCCS Hearing Officer ("H.O.") James Esgrow ("Esgrow"), and Plaintiff entered "not guilty" pleas to both the sex offense and threat charges. Hearing Tr. Pt. 1[7] at 2. At the disciplinary hearing, Plaintiff denied familiarity with the charges, asserting he had been without his eyeglasses since entering Elmira. *Id.* Plaintiff then pleaded not guilty to both charges, inquired as to in what mess hall the incident was alleged to have occurred, and requested as witnesses other inmates including C. Collins ("Collins"), Hammock ("Hammock"), and G. Mingo ("Mingo"). *Id.* at 3-6. Plaintiff also asserted that he had been denied an inmate assistance because he was unable to read the inmate assistant form, but when Esgrow inquired whether Plaintiff was asking for assistance, Plaintiff responded he needed "to find out if I need assistance, I don't know what I'm gonna need." *Id.* at 6. Esgrow then stated that the documents indicated Plaintiff did not ask for assistance and because Plaintiff was asserting he didn't know for what he wanted assistance, the hearing would be continued at a later time. *Id.*

When the disciplinary hearing recommenced on June 21, 2011, Plaintiff again stated he needed assistance, reminding Esgrow Plaintiff had advised him that without his eyeglasses, Plaintiff had been unable to read the names of the inmate assistants. Hearing Tr. Pt. 1 at 6-7. Esgrow inquired "[w]hat would you have your assistant do for you?" *Id.* Plaintiff replied he had a list of people to be located, and for which he needed

---

[7] References to "Hearing Tr. Pt. 1" are to the pages of the transcript of the June 9 and 23, 2011 portions of the disciplinary hearing, filed as Esgrow Declaration Exh. D.

copies of several documents including all documents attached to the Misbehavior Report, the G-Block housing unit log, the SHU log for the hours 9:31 A.M. to 2:31 P.M. on June 7, 2011, the kitchen area log for August 2010, during Ramadan. *Id.* at 7-9. Esgrow doubted that such information was likely to help Plaintiff establish he was not guilty of the pending charges. *Id.* Plaintiff also asserted that the three witnesses he had requested, Collins, Hammock, and Mingo, would be able to answer questions regarding whether Plaintiff had ever been observed engaging in any acts of sexual misconduct, and whether Dilone had continued to attend NOI services and classes after the alleged incident. *Id.* at 10-11. Esgrow then asked whether any of the material Plaintiff wanted to present in his defense was material in reference to the charges, and Plaintiff responded, "[s]ir, actually, there's nothing anybody can give us physically in reference to any charges, because I'm saying this didn't happen at all." *Id.* at 12. The disciplinary hearing was then adjourned because Friot, who Esgrow intended to call, could not be found.

The disciplinary hearing continued on June 23, 2011, with Mingo's tape recorded testimony on Plaintiff's behalf played back for Plaintiff to hear. Hearing Tr. Pt. 1 at 12. Mingo and Plaintiff had been the main cooks during Ramadan in August 2010, and Mingo denied ever observing Plaintiff force Dilone into any sexual relations or threaten Dione in any way. *Id.* at 13. Mingo also stated he regularly attended NOI services, but had not recently seen Dilone in attendance at services, but had seen Dilone at NOI classes. *Id.* at 13-14. Mingo also stated he found the charges against Plaintiff "really impossible to believe" given the layout of the messhall and kitchen and how busy they were preparing the Ramadan meal, *id.* at 14-15, and that Mingo did not "see that in

[Plaintiff's] character." *Id.* at 16.  Esgrow then advised Plaintiff that the two other witnesses, Collins and Hammock, had refused to testify.  *Id.*  Plaintiff then produced sign-in sheets establishing Dilone had participated in NOI classes from September 2010 until May 2011.  *Id.* at 16-17.  Friot was then called and testified that he included in the Misbehavior Report that Dilone no longer attended NOI services because that is what Dilone had claimed, clarifying that Dilone did not necessarily state he stopped attending the services immediately after the incident in August 2010.  *Id.* at 17.  In response to Esgrow's statement that Plaintiff was asserting Friot wrote the Misbehavior Report to retaliate against Plaintiff for his involvement in the NOI, Friot denied that the basis for the Misbehavior Report was anything other than reports by "several different sources" and indicated a violation of prison rules  *Id.* at 18.  Friot also admitted no witness alleged to have actually seen the incident, nor did any staff member have any information exonerating Plaintiff.  *Id.* at 18-19.  Friot clarified that the Misbehavior Report's reference to the alleged misconduct occurring in the "Messhall and various areas of Elmira CF" indicated the misconduct occurred in areas other than the messhall, but Friot could not identify which areas.  *Id.* at 20-21.  Esgrow stated that Plaintiff should understand the "messhall" to which the Misbehavior Report referred was the messhall in which Plaintiff prepared the Ramadan meals in August 2010, *id.* at 21, and Friot clarified that to him, "messhall" referred to both the kitchen and dining areas, but that because the information he received from the confidential source indicated the incident occurred while Plaintiff was preparing food, the source must have been referring to the kitchen area of the messhall.  *Id.* at 22.  According to Friot, Dilone remained registered as an NOI member, but an inmate's religious designation could be changed only by the

correctional facility's chaplains.  *Id.*  Esgrow disallowed several questions by Plaintiff to

Friot as to whether Friot observed any of the notes or letters Plaintiff allegedly sent to

Dilone asserting Dilone needed to attend the NOI services because Plaintiff was

attracted to him.  *Id.*  Plaintiff presented to Friot official correctional facility sign-in sheets

establishing that in 2011, Dilone attended NOI religious study classes four times in

January, twice in February and March, and once in April,[8] *id.* at 23, and attended NOI

religious services once in March 2011, and three times in April 2011.[9]  *Id.* at 24.  In

response to Esgrow's questioning, Plaintiff explained that an inmate assistant would

have helped Plaintiff obtain records and files from the chaplain verifying that Dilone had

attended NOI services and classes until May 2011.  *Id.* at 25.  The disciplinary hearing

was then adjourned.

When the disciplinary hearing recommenced on June 28, 2011, Esgrow advised

Plaintiff the two inmates Plaintiff asked to call as witnesses, Collins and Hammock, had

refused to testify on Plaintiff's behalf.  Hearing Tr. Pt. 2[10] at 1-2.  Plaintiff continued to

deny the Misbehavior Report's allegations, asserting the Misbehavior Report was "a

lie" and stating he had an affidavit from another inmate, one Warren Carmichael

("Carmichael"), attesting to Plaintiff's character, and which Esgrow accepted as relevant

testimony.  *Id.* at 2-3.  Esgrow further advised Plaintiff he intended to compare Dilone's

signature to Dilone's purported signature on the sign-in sheets Plaintiff asserted

established Dilone's continued participation in NOI classes and services after the

---

[8] Copies of the sign-in sheets are filed as Doc. No. 69 at 51-62.
[9] Copies of sign-in sheets showing Plaintiff attended NOI religious services are filed as Doc. No. 69 at 70-73.
[10] References to "Hearing Tr. Pt. 2" are to the pages of the transcript of the June 28 and July 12, 2011 portions of the disciplinary hearing, filed as Esgrow Declaration Exh. F.

alleged assault in August 2010.  *Id.* at 3-4.  The disciplinary hearing was then closed except for Esgrow's performing the handwriting comparison of Dilone's signature.  *Id.* at 4.

On July 12, 2011, Esgrow announced his decision on the Misbehavior Report ("disposition"), finding Plaintiff not guilty on the threats charge, but guilty on the sex offense charge.  *Id.* at 5.  Esgrow stated he took confidential testimony from Dilone and also obtained a number of documents authored by Dilone which Esgrow used to compare to the handwritten signatures on the sign-in sheets proffered by Plaintiff.  *Id.* Esgrow found the confidential testimony from Dilone contained sufficient details and specifics and was consistent with the Misbehavior Report as to support the sex offense charge.  *Id.*  As a result of the guilty determination, Plaintiff was sentenced to six months in SHU and loss of packages, commissary, and phone privileges.  On October 21, 2011, however, Plaintiff was transferred from Elmira to Attica Correctional Facility ("Attica"), where Plaintiff was housed in general population; thus, Plaintiff did not serve the full six months in SHU.[11]

## DISCUSSION

## 1.    Summary Judgment

Both Plaintiff and Defendants move for partial summary judgment on Plaintiff's First Claim, and Plaintiff also moves for summary judgment on his First Claim as well as on his Second and Third Claims.  Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any

---

[11] The record does not definitively indicate whether Plaintiff exhausted, as required by the PLRA, whether his available administrative remedies and although Defendants raise such defense in Defendants' answer, Defendant have not raised the issue on Defendants' summary judgment motion.

material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*,

321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the

light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d

Cir. 2011).  The party moving for summary judgment bears the burden of establishing

the nonexistence of any genuine issue of material fact and if there is any evidence in

the record based upon any source from which a reasonable inference in the non-moving

party's favor may be drawn, a moving party cannot obtain a summary judgment.

*Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will

not lie if the dispute about a material fact is "genuine," that is, if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party").  "A fact is

material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of

Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide

district courts in their determination of summary judgment motions."  *Brady v. Town of

Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary

judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit

a reasonable juror to return a verdict in his or her favor on'" an essential element of a

claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec.

Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379

(2d Cir. 1992)).  Once a party moving for summary judgment has made a properly

supported showing of the absence of any genuine issue as to all material facts, the

nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Both Plaintiff and Defendants seek summary judgment on the First Claim.  In accordance with the Supreme Court's direction that pleadings and papers be liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of *pro se* litigant's complaint are held to "less stringent standards than formal pleadings drafted by lawyers"); *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (*pro se* litigants are afforded "special solicitude" including liberal construction of their pleadings and papers (citing cases)), a liberal construction of the allegations asserted in Plaintiff's First Claim establishes Plaintiff is challenging as false the Misbehavior Report and that Defendants denied Plaintiff due process in the disciplinary hearing held with regard to the Misbehavior Report.

Preliminarily, the court addresses Defendants argument, Defendants' Memorandum at 5-8, that Plaintiff has not shown the conduct in question resulted in any deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States as required for a due process violation.  In evaluating an inmate plaintiff's due process claim with respect to confinement within a correctional facility, the court considers "'(1) whether the plaintiff had a protected liberty interest in not being confined , , , and, if so, (2) whether the deprivation of that liberty interest occurred without due

process of law.'" *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000) (quoting *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)). Here, Defendants particularly maintain that because on October 21, 2011, Plaintiff was transferred from Elmira, where he had been housed in SHU since the guilty hearing disposition was issued on July 19, 2011, to Attica where Plaintiff was placed in the general prison population, Plaintiff is unable to establish he served the full 180 days in SHU in accordance with the disciplinary sentence; rather, the record supports only that Plaintiff served at most 93 days in Elmira's SHU, while due process claims routinely are dismissed where the SHU confinement does not exceed 101 days. Defendants' Memorandum at 7-8 (citing *Durran v. Selsky*, 251 F.Supp.2d 1208, 1214 (W.D.N.Y. 2003)). Defendants' argument on this point, however, overlooks the fact that Plaintiff was placed in SHU on June 9, 2011, after being served with the Misbehavior Report, a fact of which Esgrow was aware such that in announcing the disciplinary hearing disposition, Esgrow specified that Plaintiff would be released from SHU on December 9, 2011, given that Plaintiff had been held in SHU since June 9, 2011. Hearing Tr. Pt. 2 at 5. Accordingly, Plaintiff served 134 days in Elmira's SHU. Further, confinement in SHU for similar lengths of time have been found not to constitute an atypical and significant hardship where the inmate plaintiff failed to allege his SHU confinement was accompanied by hardships "substantially more grave" than those prisoners ordinarily experience as members of the general prison population. *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999). In the instant case, it is not disputed that Plaintiff, while confined in Elmira's SHU for 134 days, was also denied packages, commissary and phone privileges. Whether the denial of such privileges imposed on Plaintiff an atypical and significant hardship presents a

question of fact that would preclude summary judgment but for the absence of any question of fact that the disciplinary sentence was imposed only after Plaintiff was afforded all the requisite due process.

In particular, the filing of a false misbehavior report generally does not give rise to a constitutional violation so long as the inmate against whom the charges are levied is provided with a fair Tier III disciplinary hearing. *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988). In the instant case, Plaintiff alleges he was denied due process when Defendants denied Plaintiff an inmate assistant, Plaintiff was without his eyeglasses and thus unable to read the Misbehavior Report, and Esgrow denied Plaintiff's request to call witnesses to testify on his behalf at the disciplinary hearing. The evidence in the record establishes there are no genuine issues of material fact precluding summary judgment in favor of Defendants on Plaintiff's due process claim.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) ("*Wolff*"). "[R]egardless of state procedural guarantees, the only process due an inmate is that minimal process guaranteed by the Constitution as outlined in *Wolff*." *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004). As such, a violation of a state prison regulation during a prison disciplinary hearing does not give rise to a § 1983 due process claim. *Blouin v. Spitzer*, 356 F.3d 348, 363 (2d Cir. 2004) ("federal law, not state regulations, determined the procedures necessary to protect that liberty interest."). Prison inmates nevertheless are "entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as . . . special confinement that imposes an atypical hardship." *Sira*

15

*v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) ("*Sira*").  In particular, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary action taken."  *Id.*  "Notably, there is no right to counsel or to confrontation at disciplinary hearings."  *Id.*  "Ordinarily, an 'inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.'"  *Holland v. Goord*, 758 F.3d 215, 224-35 (2d Cir. 2014) (quoting *Wolff*, 418 U.S. at 566).  Further, "[s]ince *Wolff*, the Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'"  *Sira*, 380 F.3d at 69 (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).  "This standard it extremely tolerant and is satisfied if 'there is *any* evidence in the record that supports' the disciplinary ruling."  *Id.* (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)).  The "some evidence" standard does, however, require "some 'reliable evidence.'"  *Id.* (quoting *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)).  Moreover, should a procedural due process violation in connection with a prison disciplinary hearing be established, a due process claim also requires the inmate "show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing."  *Colanuono v. Hockeborn*, 801 F.Supp.2d 110, 114 (W.D.N.Y. 2011) (citing *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991)).

With regard to Plaintiff's assertion that the Misbehavior Report failed to provide sufficient notice of the charges set forth therein, Plaintiff attributes the lack of notice to the fact that he had been without his eyeglasses since being transferred to Elmira. Hearing Tr. Pt. 1 at 2, 7, and that the Misbehavior Report failed to specify in which of Elmira's three messhalls the incident was alleged to have occurred.  *Id.* at 5-6.  With regard to Plaintiff's claimed inability to read the Misbehavior Report without his eyeglasses, the record establishes Plaintiff was able to read the Misbehavior Report, given that Plaintiff knew the Misbehavior Report was dated June 7, 2011, at 9:31 A.M., Hearing Tr. Pt. 1 at 7-8, and presented Esgrow with several documents, specifically, sign-in sheets indicating Dilone's attendance at NOI services and classes in 2011, *id.* at 17-18; 24, thus rendering unsupported Plaintiff's assertions that he was unable to read without his eyeglasses.  As to the Misbehavior Report's failure to specify in which messhall the incident was alleged to have occurred, Friot clarified at the disciplinary hearing that the incident was alleged to have occurred while Plaintiff was preparing meals, indicating in the kitchen of the messhall where the Ramadan meals were prepared, explaining that Friot considered a "messhall" as including both the dining room and kitchen areas.  Hearing Tr. Pt. 1 at 20-22.  Accordingly, Plaintiff was sufficiently advised that the incident was alleged to have occurred in the kitchen area of the messhall in which Plaintiff was preparing meals during Ramadan 2010.  Plaintiff has failed to establish any issue of fact that he was denied due process based on lack of proper notice of the disciplinary charges.

As to Plaintiff's allegation that he was denied an inmate assistant in preparing for the disciplinary hearing, the record establishes that when C.O. Dougherty served

Plaintiff with the Misbehavior Report on June 8, 2011, Plaintiff was also provided with the inmate assistant form containing the names of more than 70 individuals established as inmate assistants at the correctional facility.  Plaintiff was advised he could identify three potential inmate assistants from the inmate assistant form, ranking his selections according to his first, second and third choices, but Plaintiff refused to select an assistant and also refused to sign the inmate assistant form, and Plaintiff's refusals were witnessed by Sgt. M. Fanelli.

Plaintiff's claim that he was denied an inmate assistant, even if true, does not run afoul of any of the procedural protections specified by the Second Circuit in *Sira*.  Under certain circumstances, including where, as here, an inmate is confined to SHU and, thus, unable to collect and present the evidence necessary to establish his defense to a misbehavior report, there is a limited right to "some assistance."  *See Wolff*, 418 U.S. at 570 (holding an inmate who is unlikely to be able to collect and present evidence necessary for an adequate comprehension of a disciplinary proceeding, should be free to seek the aid of an inmate assistant); *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993) (requiring inmate be offered assistance when charged with a prison offense warranting SHU confinement).  Nevertheless, an inmate may waive this limited right to assistance, *Dawes v. Carpenter*, 899 F.Supp. 892, 896 (W.D.N.Y. 1995) ("there is no duty to provide assistance to an inmate who does not want it"), and in the instant case, the inmate assistant form presented to Plaintiff along with a copy of the Misbehavior Report indicates that Plaintiff refused an inmate assistant and also refused to sign the form. Esgrow Declaration Exh. E.  The refusal to select an inmate assistant on such a form, along with the inmate's refusal to sign the inmate assistant form has been held in this

court to constitute a waiver of the right to an inmate assistant at a prison disciplinary

hearing, despite the inmate's objection at the disciplinary hearing that the inmate

desired an assistant.  *Sloane v. Borawski*, 64 F.Supp.3d 473, 486 (W.D.N.Y. 2014)

(holding inmate plaintiff's claim that he was denied an inmate assistant in connection

with a Tier III disciplinary hearing failed as a matter of law where the inmate refused to

select an inmate assistant and also refused to sign the inmate assistant form indicating

he refused to select an assistant, and made unclear statements at the commencement

of the Tier III disciplinary hearing from which the hearing officer was unable to discern

whether the plaintiff was, in fact, requesting assistance).  Similarly, in the instant case,

Plaintiff made equivocal statements at the disciplinary hearing asserting that he was

unable to decide whether he required an inmate assistant, Hearing Tr. Pt. 1 at 6, and

was without his eyeglasses and, thus, unable to read the inmate assistant form.  *Id.* at

7.  Insofar as Plaintiff was unable to obtain, without assistance, copies of the G-Block

housing unit log establishing that at 9:31 A.M. on June 7, 2011, Plaintiff was attending

classes and, thus, could not have committed the rule violations charged in the

Misbehavior Report, *id.* at 7-9, such evidence would have been immaterial because the

specified time and date reflects only when the Misbehavior Report was authored,

whereas the Misbehavior Report clearly states the subject incident occurred in August

2010.  Moreover, in response to Esgrow's questions, Plaintiff admitted that an inmate

assistant was not necessary to the preparation of Plaintiff's defense.  *Id.* at 12 (Plaintiff

stating, "[s]ir, actually, there's nothing anybody can give us physically in reference to

any charges, because I'm saying this didn't happen at all.").  Accordingly, the record

fails to establish any genuine issue of material fact that Esgrow's failure to make further

arrangements for Plaintiff to obtain an inmate assistant resulting in denying Plaintiff any due process in connection with the disciplinary hearing.

With regard to Plaintiff's assertion that he was denied the right to call certain witnesses to testify, particularly, Hammock, another inmate and member of the NOI who Plaintiff maintains was assigned to the kitchen with Plaintiff during Ramadan, Esgrow stated on the record that Hammock had refused to testify.  Hearing Tr. Pt. 1 at 16.  "The refusal to call witnesses whose testimony would be redundant is not a violation of any established due process right."  *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citing *Russell v. Selsky*, 35 F.3d 55, 58-59 (2d Cir. 1994) (holding prison hearing officer "did not violate any clearly established constitutional or statutory right" for refusing an inmate's request to call suggested witnesses who would have given "duplicative or nonprobative testimony").  Nevertheless, "'prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify. . . .'" *Colantuono*, 801 F.Supp.2d at 114 (quoting *Ponte v. Real*, 471 U.S. 491, 497 (1985)). "They need not give a detailed explanation, however, and 'may do so . . . by making the explanation a part of the 'administrative record' in the disciplinary hearing.'"  *Id.* Accordingly, Esgrow, by advising Plaintiff Hammock had refused to testify, explained why Hammock would not be testifying on Plaintiff's behalf.  Significantly, at the disciplinary hearing, Plaintiff did not challenge this explanation.

In opposing summary judgment, however, Plaintiff presents affidavits from Hammock dated August 3, 2011 ("First Hammock Affidavit"),[12] and June 11, 2015 ("Second Hammock Affidavit").[13]  In the First Hammock Affidavit, Hammock states that

---

[12] Exh. A to Plaintiff's Opposing Statement of Facts.
[13] Exh. A-1 to Plaintiff's Opposing Statement of Facts.

he was incarcerated at Southport Correctional Facility ("Southport"), when he was called

to testify at the disciplinary hearing on Plaintiff's behalf, but while waiting to be called to

testify, Hammock was using the restroom when the corrections officer arrived to escort

Hammock to testify, and the corrections officer never returned.  First Hammock Affidavit

¶¶ 1-2.  Hammock emphasizes he never refused to testify on Plaintiff's behalf, *id.* ¶¶  2,

11, that Hammock has read the Misbehavior Report, *id.* ¶ 3, and that Dilone never quit

the NOI while Hammock served as Elmira's NOI clerk, a position in which Hammock

was required to keep records regarding NOI membership and attendance at NOI

classes and services.  *Id.* ¶¶ 3-5.  Hammock further states that was assigned to the

kitchen during Ramadan of 2010, and worked extremely close with Plaintiff and Mingo,

but never observed any of the behavior with which Plaintiff was charged in the

Misbehavior Report, and Elmira's three messhalls are monitored through closed circuit

surveillance cameras.  *Id.* ¶¶ 6-7.  Hammock attributed Friot's authoring the Misbehavior

Report to Friot's personal problems with the NOI.  *Id.* ¶¶ 9-10.  In the Second Hammock

Affidavit, Hammock reiterates many of the same statements, but adds that while

incarcerated at Elmira, in addition to serving as the NOI clerk, Hammock also served as

the NOI secretary, Second Hammock Affidavit ¶ 4, and that no form indicating

Hammock refused to testify on Plaintiff's behalf has been presented because Hammock

never refused to so testify.  *Id.* ¶¶  14-16.  Hammock also references attendance sheets

and photographs taken at Elmira's NOI Family Event on October 2, 2010, depicting

Plaintiff, Hammock, and Dilone were all present at the event.  *Id.* ¶¶ 17-8 (referencing

Amended Second Claim at 41-46).  None of the assertions in the First and Second

Hammock Affidavits, however, refutes Esgrow's statement that he had been informed of

anything other than that Hammock, then housed at Southport, had refused to testify at the disciplinary hearing, a statement which Plaintiff did not challenge when made.[14]  The record is thus devoid of any evidence attributing the failure to have Hammock testify on Plaintiff's behalf at the disciplinary hearing to a denial of due process.

In announcing his disposition on the Misbehavior Report, Esgrow specified the disposition was based on consideration of the evidence, including confidential testimony from Diolone, a comparison of Dilone's signature on the sign-in sheets and other documents authored by Dilone, Esgrow's determination that the testimony given by Friot and Dilone,given in confidence against Plaintiff, was credible based on the details and specifics and did not seem to have been motivated by any desire to harm Plaintiff, but did "cast doubt" on the documents presented by Plaintiff.  Hearing Tr. Pt. 2 at 5. Esgrow's disposition thus was supported by "some evidence" which is "reliable."  *Sira*, 380 F.3d at 69 (quoting *Hill*, 472 U.S. at 455).

Summary judgment on Plaintiff's First Claim should thus be DENIED as to Plaintiff and GRANTED in favor of Defendants.  Insofar as Plaintiff's Summary Judgment and Discovery Motion can be construed as also moving for summary judgment on his Amended Claims, as discussed below, Discussion, *infra*, at 23-27, assuming, *arguendo*, the District Judge concurs with the recommendation that the Amended Claims be dismissed and with prejudice, Plaintiff's request for summary judgment with regard to the Amended Claims is DISMISSED as moot.  Furthermore, insofar as Plaintiff's Summary Judgment and Discovery Motion can be construed as moving for discovery on Plaintiff's Second and Third Claims, the request is DISMISSED

---

[14] The record does not explain how, despite well-known restrictions on inter-prisoner communications, Plaintiff was able to procure the Hammock Affidavits, however, Defendants do not challenge their authenticity.

as moot by the recommended dismissal of such claims.  Plaintiff's Summary Judgment and Discovery Motion therefore should be DISMISSED as moot as to the Amended Second and Third Claims.

**2.      § 1915(a) Screening**

Defendants move for the court to screen Plaintiff's Amended Claims under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), arguing the Amended Claims are redundant of the original Second and Third Claims for which the Second Claim was dismissed as deficient as to such details of the relevant incidents, including the dates and locations of the incidents and the identities of those involved, and the Third Claim was dismissed for failure to allege the requisite personal involvement in the asserted constitutional violation.  Defendants' Memorandum at 19-20.  In further support of this portion of Defendants' Motion, Defendants point out that Plaintiff has not argued to the contrary. Defendants' Reply at 4.

Pursuant to 28 U.S.C. § 1915A ("§ 1915A"), the court is required to review a *pro se* inmate plaintiff's complaint and dismiss any claim that "is frivolous, malicious, or fails to state a claim upon which relief can be granted."  28 U.S.C. § 1915A(a) and (b).  Here, although not specifically stated by Defendants, because Defendants do not argue the Amended Claims are either frivolous or malicious, the context of Defendants' argument on this point establishes Defendants are challenging Plaintiff's Amended Claims as failing to state a claim for which relief can be granted.

**A.      Amended Second Claim – Religious Freedom**

In dismissing Plaintiff's original Second Claim, the court stated that where an inmate plaintiff alleges a civil rights violation based on the issuance of a false

misbehavior report, such claim, standing alone, does not state a claim for which relief

can be granted so long as the inmate received a disciplinary hearing on the misbehavior

report at which the inmate was permitted to present a defense.  R&R at 11 (citing

*Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997)).  An assertion that the

misbehavior report issued to retaliate against an inmate for exercising a constitutional

right, however, might state a claim.  *Id.*  Significantly, in the instant case, although

Plaintiff's Amended Second Claim is largely a reiteration of his First Claim with one

exception, *i.e.*, an assertion that Defendants arranged for the filing of a false

Misbehavior Report against Plaintiff, failed to properly investigate the asserted

confidential source, and denied Plaintiff due process in connection with the disciplinary

hearing held on the Misbehavior Report, unlike his First Claim, Plaintiff also asserts that

Defendants Friot and Esgrow engaged in the challenged conduct to coerce Plaintiff into

ceasing participation in the NOI religion, thereby interfering with Plaintiff's First

Amendment right to the free exercise of his religion, and the Religious Land Use and

Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*[15]  Amended

Amended Claim at 58.  Such allegations would be sufficient to survive dismissal upon

screening under § 1915A but for the dismissal on summary judgment of Plaintiff's First

Claim.  Specifically, assuming *arguendo*, the District Judge agrees with the

undersigned's recommendation that summary judgment be granted in Defendants' favor

on the First Claim, such determination would render without merit the premise of the

---

[15] In the Answer, Defendants assert their Sixth Affirmative Defense, *i.e.*, that Plaintiff failed to exhaust administrative remedies, only as to the First Claim.  Answer ¶ 4.  Nevertheless, failure to exhaust administrative remedies is not a proper ground for *sua sponte* dismissal of prisoner suits upon judicial screening under 28 U.S.C. § 11915A(b) and 42 U.S.C. § 1997e(c)(1).  *See Jones v. Bock*, 549 U.S. 199, 214 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirements because such requirements which may be waived).

Amended Second Claim, *i.e.*, that Defendants issued Plaintiff a false misbehavior report and then denied Plaintiff a fair hearing on the report to coerce Plaintiff into quitting the NOI and to retaliate against Plaintiff for failing to do so.

Plaintiff's Amended Second Claim thus should be DISMISSED.

## B.    Amended Third Claim – Disciplinary Hearing

The court dismissed Plaintiff's original Third Claim because Plaintiff failed to allege the requisite personal involvement of Defendants Prack and Venettozzi.  R&R at 12-13.  In the Amended Third Claim, Plaintiff alleges that Venettozzi, as DOCCS's Acting Director of SHU, and Prack, as DOCCS's SHU Director, failed to reverse Esgrow's guilty disposition on the Misbehavior Report's sex offense charge.  Amended Third Claim at 59.  The Amended Third Claim must be dismissed for two reasons.  First, the dismissal on summary judgment of the First Claim challenging the disciplinary hearing as lacking in due process renders moot the basis of the Amended Third Claim. Second, it is settled that a supervisory defendant must have been personally involved in an alleged constitutional violation to be held liable under § 1983, *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006), but such liability cannot be based "solely on the defendant's supervisory capacity or the fact that he held the highest position of authority within the relevant governmental agency or department."  *Houghton v. Cardone*, 295 F.Supp.2d 268, 276 (W.D.N.Y. 203).  *See Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim.").  Accordingly, Plaintiff's allegations regarding Prack and Vennettozzi's failure to take steps to correct Esgrow's guilty disposition on the sex offense charge, without more, do not sufficiently allege

personal involvement by Prack or Venettozzi in the Amended Third Claim.  *See Ramsey v. Goord*, 2005 WL 2000144, at *6 (W.D.N.Y. Aug. 13, 2005) ("the fact that [defendants DOCCS's Commissioner and SHU director] as officials in the DOCS 'chain of command,' affirmed [the defendant hearing officer's disciplinary] determination on appeal is not enough to establish personal involvement on their part.").  Plaintiff's Amended Third Claim should thus be DISMISSED.

### C.    Dismissal with Prejudice

Although dismissal of a *pro se* plaintiff's claims for failure to state a claim is generally without prejudice and with leave to replead, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Here, the problems with Plaintiff's Second and Third Claims, as repleaded, are substantive such that further pleading cannot cure them and would be futile.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Accordingly, the dismissal of Plaintiff's Amended Second and Third Claims should be with prejudice and without leave to replead.

### 3.    Reconsideration

In the August 6, 2015 Order, the undersigned, observing that the stay of proceedings Plaintiff sought in both the First and Second Motions to Stay was intended to permit Plaintiff to conduct discovery necessary to avoid summary judgment of his Amended Second and Third Claims, yet Defendants had moved for summary judgment only on Plaintiff's First Claim, dismissed as moot both First and Second Motions to Stay.  August 6, 2015 Order at 1-2.  Plaintiff argues in support of the Reconsideration Motion

that in Defendants' Motion, Defendants directly challenge issues in Plaintiff's Amended

Claims, including the alleged denial of due process at the disciplinary hearing, including

denying Plaintiff's requests for inmate witnesses, proper notice of the location of the

charges prison rule violations, and a "religious issue."  Reconsideration Motion at 1-2.

Defendants argue in opposition of the Reconsideration Motion that Plaintiff has failed to

establish any of the criteria relevant to a motion for reconsideration.  Plaintiff has not

argued in further support of the Reconsideration Motion.

Motions for reconsideration of a non-dispositive order, like the August 6, 2015

Order, are considered under Fed.R.Civ.P. 60 ("Rule 60"), the standard for which

granting "is strict, and reconsideration will generally be denied unless the moving party

can point to controlling decisions or data that the court overlooked – matters, in other

words, that might reasonably be expected to alter the conclusion reached by the court."

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).   "The major grounds

justifying reconsideration are an intervening change of controlling law, the availability of

new evidence, or the need to correct a clear error or prevent a manifest injustice."

*Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations

omitted).  In the instant case, Plaintiff does not argue any of these grounds is present,

nor does the most liberal construction of Plaintiff's Reconsideration Motion hint at any

such ground; rather, Plaintiff's argument in support of reconsideration essentially

addresses arguments Defendants assert in support of their present motion seeking

summary judgment on only the First Claim and is silent on the merits of the Second and

Thirds Claims as amended.[16]   Accordingly, Plaintiff's Reconsideration Motion is

DISMISSED as moot.


## **CONCLUSION**

Based on the following, Plaintiff's Partial Summary Judgment Motion (Doc. No.

38), should be DENIED; Plaintiff's Reconsideration Motion (Doc. No. 47), is

DISMISSED as moot; Defendants' Motion (Doc. No. 57), should be GRANTED;

Plaintiff's Summary Judgment and Discovery Motion (Doc. No. 59), should be

DISMISSED as moot; and the Amended Second and Third Claims should be

DISMISSED with prejudice.   The Clerk of the Court should be directed to close the file.

SO ORDERED, as to Plaintiff's
Reconsideration Motion.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


Respectfully submitted, as to Plaintiff's Partial
Summary Motion, Defendants' Motion, and Plaintiff's
Summary Judgment and Discovery Motion,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      March 30, 2016
            Buffalo, New York

_____

[16] The court notes one consequence of Plaintiff's rather prolix submissions is that many of the same facts are alleged in support of each of Plaintiff's three claims.

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 30, 2016
            Buffalo, New York