UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HOWARD AYERS,

                Plaintiff,                                12-CV-656(LJV)(LGF)
                                                     DECISION AND ORDER

      v.

J. ESGROW, Hearing Officer (CHO); L.
FRIOT, SCC; D. VENETTOZZI, Acting
Director (SHU); and A. PRACK, Director
Special Housing Unit,

                Defendants.

_____

## INTRODUCTION

Pro se plaintiff Howard Ayers commenced this action in July 2012, alleging violations of his constitutional rights under 42 U.S.C. § 1983 and Article 1, Section 3, of the New York State Constitution.[1]

This case was referred to United States Magistrate Judge Leslie G. Foschio on May 23, 2013.  Docket Item 16.  On March 30, 3016, Judge Foschio issued a Report and Recommendation ("R&R") and a Decision and Order ("D&O") addressing several pending motions.  Docket Item 72.  For the reasons set forth below, the Court adopts the R&R in part.

_____

[1] The plaintiff also asserted a violation of his religious rights under 42 U.S.C. § 2000cc *et seq.*, the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  Because the RLUIPA provides no private right of action for money damages against state officials acting in their individual capacities, that part of his claim lacks merit and is dismissed. *See Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013).

## PROCEDURAL BACKGROUND

The plaintiff's original complaint included three claims: violations of procedural due process (first and third claims) and a violation of his free exercise of religion (second claim). *See* Docket Item 1. In December 2014, the plaintiff's second and third claims were dismissed with leave to file an amended complaint. Docket Item 32. So in February 2015, the plaintiff filed a new pleading supplementing his second and third claims. *See* Docket Item 34 (docketed as "Amended Claims").

On March 23, 2015, the plaintiff filed his "Motion for Partial Summary Judgment—First Claim Only." *See* Docket Item 38-4. The defendants filed a cross-motion, entitled "Defendant's Motion for Summary Judgment," shortly thereafter. Docket Item 47. In that cross-motion, the defendants (1) requested partial summary judgment on the plaintiff's first claim, Docket Item 47-1 at 3-18, and (2) requested that the plaintiff's amended second and third claims be screened and dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) (screening procedures for pro se inmate complaints). *See id.* at 20-21.

The plaintiff—apparently interpreting the defendants' Motion for Summary Judgment as being a motion for summary judgment on all his claims rather than on simply the first claim—filed a flurry of motions in response. Judge Foschio denied two of these motions: Docket Items 52 (motion for stay) and 53 (motion for extension of time to file a response). Thereafter, the plaintiff filed two more motions that are addressed in the R&R/D&O: a motion for reconsideration, Docket Item 57, and what the plaintiff titled "Motion Under Fed. R. Civ. P. 56(d)(f)," Docket Item 59. The latter was docketed as another motion for summary judgment (the third in this procedural Gordian

Knot) and was fully briefed.  But that motion apparently was intended only to oppose the defendants' cross-motion to screen the plaintiff's amended second and third claims; it did not itself request summary judgment.[2]

In his R&R, Judge Foschio recommended that this Court: deny the plaintiff's Motion for Partial Summary Judgment (Docket Item 38); grant the defendants' Motion for Summary Judgment to the extent that it sought partial summary judgment on the plaintiff's first claim (Docket Item 47); deny as moot the plaintiff's "Motion Under Fed. R. Civ. P. 56(d)(f)" (Docket Item 59); and dismiss with prejudice, after screening, the plaintiff's amended second and third claims (Docket Item 34).  Docket Item 72 at 28. Judge Foschio also denied the plaintiff's non-dispositive motion for reconsideration (Docket Item 57).  *See* Docket Item 72 at 28.

## FACTUAL BACKGROUND

On a motion for summary judgment, the Court must construe the facts in the light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  Here, each party has moved for partial summary judgment on the plaintiff's first claim.  *See* Docket Items 38, 47.  In presenting the facts, the Court therefore draws from the appropriate party's statement of undisputed facts (Docket Items 39, 42-2) whenever possible.

---

[2] Although the plaintiff moved the Court for a confusing combination "under the law of Fed. R. Civ. P. 56(d) and 56(f)," Docket Item 59 at 1, the plaintiff's statements in his motion and in the accompanying memorandum of law seek only further discovery, which is proper under Rule 56(d).  The plaintiff's reference to Rule 56(f) apparently was a mistake stemming from the provision's move from Rule 56(f) to 56(d) in 2010.

On June 7, 2011, defendant Friot, a corrections officer at the Elmira Correctional

Facility where the plaintiff was incarcerated, issued a misbehavior report that charged

Ayers with a sex offense and threat in violation of the prison rules:

> On 6/7/2011 at approximately 9:31 a.m. I received confidential information
> from a reliable source that informed me that inmate Ayers, Howard
> 93A2932, G-&-24-, forced inmate Dilone, Jonathan . . . to engage in a
> sexual act. The incident dates back to August 2010 during Ramadan. This
> source stated that the incident took place in the mess hall during the
> preparation of the Ramadan meals. Inmate Ayers approached inmate
> Dilone with his exposed erect penis and ordered him to preform [*sic*] oral
> sex upon him. . . .  Dilone did masturbate inmate Ayers in fear that if he
> did not there would be physical retaliation [*sic*]. . . .  Inmate Dilone is in
> fear of his safety as inmate Ayers is an influential member of the Nation of
> Islam Community and a key leader in the group (see attached callouts).

Docket Item 48-1 at 12.

On June 9, 2011, in the first session of the Tier III hearing before defendant

Esgrow, a hearing officer at the facility, Ayers pleaded not guilty to the charges against

him and was given an opportunity to ask that certain witnesses testify.  *Id.* at 21-24.   He

requested the following witnesses: Corrections Officer Friot, who filed the Misconduct

Report; and inmates Collins, Hammock, and Mingo, who, like Ayers, worked as cooks in

preparation of that year's Ramadan celebrations.  Docket Item 48-1 at 21-23.  During

the next session, on June 21, Ayers provided the questions he wanted Esgrow to ask

these witnesses.  Docket Item 48-1 at 28-30.

On June 23, Esgrow interviewed inmate Mingo.  Mingo told Esgrow that Dilone,

the alleged victim, had only recently stopped attending Nation of Islam services; that

Mingo did not witness the alleged misconduct; and that the mess hall listed in the report

had a layout such that someone would have seen the sexual acts alleged against Ayers

had they occurred.  *Id.* at 30-34.  The interview was recorded.  *Id.*

Esgrow played this testimony for Ayers during proceedings on June 28, 2011.  *Id.* at 34.  Esgrow then advised Ayers that inmates Collins and Hammock had refused to testify for him, and he asked Ayers whether those two witnesses would provide testimony different than Mingo's.  Docket Item 48-1 at 34.  Ayers responded that he did not know what they would say.  *Id.*  Esgrow provided Ayers with documentation of Collins's refusal, but when he could not find evidence of Hammock's refusal, he stated that Ayers could review that documentation once it was located.  *Id.* at 50-51.  Esgrow also received into evidence an affidavit from inmate Carmichael, who stated that he had worked in the kitchen with Ayers during meal preparations for Ramadan and that he had not witnessed any alleged misbehavior.  *Id.* at 51-52.

Esgrow also questioned Friot—with Ayers present—at the June 28 proceeding. During the questioning, Ayers said that Friot had retaliated against him for his "affiliation in the [Nation of Islam]."  *Id.* at 36.  When asked by Esgrow whether he wrote the report in retaliation for the plaintiff's involvement with the Nation of Islam, Friot responded that he had not.  *Id.*  On the contrary, Friot said that he wrote the report "[b]ecause it was based on information that was give[n] to [him] by several different sources that indicated that this was going on . . . because it's a violation of the department['s] rules."  *Id.*  On further questioning, Friot indicated that he had no personal knowledge of the incident or of any words constituting the alleged threat, that he considered the mess hall to include both the mess hall and the kitchen areas, and that Dilone remained a registered member of the Nation of Islam.  *Id.* at 35-41.  At the end of the session, Esgrow accepted a series of sign-in sheets proffered by Ayers and then closed the proof.  *Id.* at 41-43, 51-53.

On July 12, 2011, Esgrow found Ayers guilty with respect to the alleged sex offense and not guilty with respect to the alleged threat.  *Id.* at 53.  He based his findings on the misbehavior report, Friot's testimony, handwriting samples, and confidential testimony.  *Id.*  Esgrow explicitly found that "this misbehavior report [was] not a result of retaliation by staff" and that Ayers "had adequate opportunity for meaningful assistance" during his hearing.  *Id.*  As a result, Ayers was assessed a $5 surcharge; was assigned to the Special Housing Unit ("SHU") for six months—June 9 to December 9, 2011; and lost special housing, package, and commissary privileges, as well as access to his phone and one month of good-time credit.  *Id.* at 54.  On October 21, 2011, he was transferred from Elmira to Attica Correctional Facility, where he was placed in the general prison population.  Docket Item 48-1 at 60.  He had spent 134 days in SHU confinement.

## APPLICABLE LAW

### A.    Review of the Report and Recommendation

When a magistrate judge issues a R&R on a dispositive motion, a district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).  The Court must review the magistrate judge's orders with respect to any non-dispositive motions—here, for example, the plaintiff's motion for reconsideration (Docket Item 57)—only upon appeal by a defendant.  28 U.S.C. § 636(b)(1)(A).  The plaintiff did not appeal Judge Foschio's denial of his motion for reconsideration, and this Court therefore does not review that order.

**B.      Summary Judgment**

Because Ayers has objected to Judge Foschio's recommendation that summary judgment be granted against him on his first claim, this Court must review that recommendation de novo.  A court should grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The evidence must be construed in the light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).

Even under that generous standard, the evidence must evince a dispute that is genuine.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (stating there should be no summary judgment "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  The fact that dueling cross-motions for summary judgment were filed, and that both sides therefore argue that there are no material issues of fact, does not necessarily mean that there are no genuine issues of material fact left to resolve: "cross-motions are no more than a claim by each side that it alone is entitled to summary judgment."  *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 103 (2d Cir. 2010) (quoting *N.Y. State Ass'n of Realtors, Inc. v. Shaffer*, 27 F.3d 834, 838 (2d Cir. 1994)).  The court therefore must decide "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (quoting *Improvement Co. v. Munson*, 81 U.S. 442, 448 (1871)).

Ayers is a pro se litigant; as such, he is entitled to liberal construction of his pleadings.  *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (acknowledging the "special solicitude" afforded to pro se litigants); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that pro se litigant's allegations are held to "less stringent standards than formal pleadings drafted by lawyers"); *see also DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (quoting *Milano v. Astrue,* 05-CV-6527, 2008 WL 4410131, at *2, *24 (S.D.N.Y. Sept. 26, 2008) ("The objections of parties appearing *pro se* are 'generally accorded leniency' and should be construed 'to raise the strongest arguments that they suggest.'")).

## C.      Screening under the Prison Litigation Reform Act

In accordance with the Prison Litigation Reform Act, a court must review a pro se plaintiff–prisoner's complaint and dismiss any claim that "is frivolous, malicious, or fails to state a claim upon which relief can be granted."  28 U.S.C. § 1915A(a), (b).  This Court has reviewed Ayers's amended second and third claims, de novo, under this standard.

## ANALYSIS

## A.      Summary Judgment on the Plaintiff's First Claim

In his first claim, Ayers alleges that Esgrow deprived him of procedural due process rights to which Ayers was entitled during his disciplinary hearing.

In recommending that summary judgment be granted in favor of the defendants on this claim, Judge Foschio found that the plaintiff's SHU confinement and restricted privileges would pose "a question of fact that would preclude summary judgment *but for the absence of any question of fact that the disciplinary sentence was imposed only*

8

*after Plaintiff was afforded all the requisite due process.*"  Docket Item 72 at 14-15

(emphasis added); *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995) (indicating that

liberty interest is implicated when an inmate experiences "atypical and significant

hardship . . . in relation to the ordinary incidents of prison life").  In other words, Judge

Foschio found that Ayers received the process due to him regardless of the liberty

interest at stake, and, therefore, that Ayers's claim lacks merit.

     To make out his due process claim, Ayers must demonstrate that he had "a

protected liberty interest" and that he was deprived of that interest without adequate

procedural protection.  *See Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000).  In a

disciplinary context, a prisoner's due process rights have been violated only if he was

disciplined in a way that abridges his liberty interest without such protections.  *Freeman*

*v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986).  But unlike the protections afforded to

those accused of crimes, the protections given to convicted prisoners are limited:

> [A]n inmate is entitled to advance written notice of the charges against
> him; a hearing affording him a reasonable opportunity to call witnesses
> and present documentary evidence; a fair and impartial hearing officer;
> and a written statement of the disposition, including the evidence relied
> upon and the reasons for the disciplinary actions taken.

*Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004); *see also Wolff v. McDonnell*, 418 U.S.

539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution,

and the full panoply of rights due a defendant in such proceedings does not apply.").

     To satisfy due process, a hearing officer's determination must be supported by

"some evidence."  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Luna v.*

*Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (stating that "some evidence" requires some

"reliable evidence").  "This standard is extremely tolerant and is satisfied if 'there is any

evidence in the record that supports' the disciplinary ruling." *Sira*, 380 F.3d at 69

(quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)).  Finally, in the

Second Circuit, even if the prisoner proves that his due process rights were violated in

the disciplinary hearing, he still must demonstrate that the procedural errors prejudiced

him and thus "affected the outcome of the hearing." *Colantuono v. Hockeborn*, 801 F.

Supp. 2d 110, 114 (W.D.N.Y. 2011) (citing  *Powell v. Coughlin*, 953 F.2d 744, 750 (2d

Cir. 1991)).

        This Court agrees with Judge Foschio that Ayers without a doubt received

adequate notice, *see* Docket Item 72 at 17; the opportunity for inmate assistance, *see*

*id.* at 17-20; and a sufficient statement by Esgrow, an impartial hearing officer, of the

evidence upon which he relied, *see id.* at 22.[3]  For that reason, there is no genuine

issue of fact as to whether those protections adequately afforded him due process.

        Although a closer question, there also is no genuine dispute of material fact as to

whether Ayers had a reasonable opportunity to call witnesses in his defense.  *See id.* at

20-22.  Ayers claims that Esgrow knowingly denied him the testimony of inmate

Hammock, who was a member of the Nation of Islam and who worked with the plaintiff

in the kitchen during Ramadan. *See id.* at 20; Docket Item 34 at 58.  But Hammock's

testimony would simply have duplicated what inmate Mingo said and what inmate

Carmichael included in his affidavit, so Esgrow acted within his authority in proceeding

without it.

_____

[3] Ayers raised only the denial of inmate assistance under his first claim, but this Court,
like Judge Foschio, has conducted a complete due process analysis to determine
whether each of the necessary procedural protections was afforded to Ayers.  *See*
*Tracy*, 623 F.3d at 101 (pro se pleadings entitled to liberal construction).

An inmate is entitled to "a reasonable opportunity to call witnesses." *Sira*, 380 F.3d at 69. When a hearing officer reasonably determines that a requested witness's testimony would be "duplicative or non-probative," however, a court should not find that the inmate was denied adequate process. *Russell v. Selsky*, 35 F.3d 55, 58-59 (2d Cir. 1994); *see also Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) ("The refusal to call witnesses whose testimony would be redundant is not a violation of any established due process right.").

Here, inmate Mingo testified on Ayers's behalf that the mess hall's floorplan and the cooperative nature of meal preparation would have resulted in someone witnessing the alleged sexual acts if they had occurred. Docket Item 48-1 at 32-33. Because Mingo and Ayers were the primary cooks for Ramadan, *id.* at 33, Mingo would have had the best opportunity of all the potential inmate witnesses to see what happened. His testimony that he witnessed no sexual misconduct, *see id.* at 31-34, and the similar statement in inmate Carmichael's affidavit, *id.* at 50, render duplicative any testimony from inmate Hammock that would have been helpful to Ayers. And that is especially so because Ayers wanted the exact same questions posed to each of the inmate witnesses. *See id.* at 23. Esgrow therefore was justified in concluding that Hammock's testimony would likely be redundant, Docket Item 48-1 at 47, and its exclusion from the disciplinary hearing therefore did not prejudice Ayers or affect the outcome. *See Colantuono*, 801 F. Supp. 2d at 114.

What is more, a hearing officer has broad discretion to exclude witness testimony for other reasons as well. "It is well settled that an official may refuse to call witnesses as long as the refusal is justifiable." *See Scott v. Kelly*, 962 F.2d 145, 146 (2d Cir. 1992). It stands to reason that when a witness declines to testify, a hearing officer is

justified in not calling that witness.  The Second Circuit has concluded as much.  *See*

*Silva*, 992 F.2d at 22 ("We hold that if a prison official, presiding over a prison

disciplinary hearing, reasonably concludes that it would be futile to call a witness to

testify, his refusal to do so will not constitute a violation of the prisoner's constitutional

rights."); *see also Johnson v. Doling*, 2007 WL 3046701, at *7 (N.D.N.Y. Sept. 17, 2007)

(stating that a hearing officer need not conduct an independent evaluation to verify a

witness's refusal to testify).

During the hearing, Esgrow told Ayers that Hammock had refused to testify, and

he referenced a "refusal document" signed by Hammock.  Docket Item 48-1 at 34, 51.

Ayers maintains the opposite—that Hammock did not refuse to testify, Docket Item 34

at 58—and he offers two affidavits from Hammock to support his position.  *See* Docket

Item 69-1 at 2-11.  According to Hammock, an escort arrived at Southport Correctional

Facility to bring him to testify on Ayers's behalf while Hammock was using the restroom,

and although Hammock emerged prepared to testify, the escort never returned.  Docket

Item 79 at 61, 66.

Judge Foschio concluded that these affidavits failed to demonstrate that Esgrow

"was informed of anything other than that Hammock . . . had refused to testify at the

disciplinary hearing" and that the failure to have Hammock testify therefore did not

amount to a denial of due process.  Docket Item 72 at 21-22.  This Court agrees.  Even

accepting as true Ayers's position that Hammock actually did not refuse to testify,

Esgrow did not—and had no reason to—know that.  *See* Docket Item 48-1 at 34, 51;

*see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted)

("[S]upervisory liability may be imposed where an official demonstrates 'gross

negligence' or 'deliberate indifference' to the constitutional rights of inmates by failing to

act on information indicating that unconstitutional practices are taking place."). Esgrow

therefore acted reasonably in not calling Hammock as a witness, and the plaintiff's

argument with respect to Hammock's testimony fails for that reason as well.

The procedural due process requirements of the disciplinary hearing were met,

and Esgrow's reliance on the misbehavior report, testimony, and handwriting samples

demonstrates that there is sufficient evidence to support his findings. *Superintendent*,

472 U.S. at 455; *Freeman*, 808 F.2d at 953-55; Docket Item 48-1 at 53. For these

reasons, the plaintiff's Motion for Partial Summary Judgment on his first claim is denied,

and the defendants' Cross-Motion for Partial Summary Judgment with respect to the

plaintiff's first claim is granted.

**B.    Screening of the Plaintiff's Second and Third Claims**

**1.    Second Claim**

The plaintiff also objects to the magistrate judge's dismissal with prejudice of his

amended second claim—that Friot violated his right to freely exercise his religion.[4]

Docket Item 34 at 58. More specifically, Ayers claims that Friot vindictively seized

personal religious property from him, removed him from his "religious clerk position,"

and knowingly filed a falsified misbehavior report against him. Docket Item 34 at 6-8,

58.

Judge Foschio found that Ayers's allegations under his amended second claim

with respect to defendant Friot were "sufficient to survive dismissal upon screening

---

[4] In his second claim, Ayers again raises his procedural due process claim against
Esgrow. The Court fully evaluated that claim above and will not rehash that analysis
here.

under § 1915A," but that granting summary judgment on the plaintiff's first claim "would render without merit the premise of the Amended Second Claim, *i.e.*, that Defendants issued Plaintiff a false misbehavior report and then denied Plaintiff a fair hearing on the report to coerce Plaintiff into quitting the [Nation of Islam] and to retaliate against Plaintiff for failing to do so."  Docket Item 72 at 24-25.

The Court agrees with Judge Foschio that the amended second claim on its face states a claim upon which relief could be granted but disagrees that granting summary judgment for the defendants on the first claim undermines the entire second claim.  *See* Docket Item 72 at 24-25.  In his second claim, Ayers alleges more than that he simply was the subject of the false charges because of his religion; he also alleges that defendant Friot seized his personal property and removed him from his position in violation of his First Amendment rights.  So even though Esgrow afforded Ayers adequate procedural protections during his hearing, the Court still must determine whether the plaintiff suffered other consequences, in violation of his First Amendment rights, due to the exercise of his religion.  *See Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988) ("[A]n inmate may resort to section 1983 in attempting to vindicate substantive rights arising out of such other provisions as the First Amendment.").  In other words, the plaintiff's first claim against Esgrow on procedural due process grounds differs from his amended second claim against Friot on First Amendment grounds.[5]  The fact that Esgrow provided sufficient process during Ayers's disciplinary hearing and that Ayers was gound guilty may preclude the claim that Ayers was the victim of false charges, but it does not preclude the other substantive claims against Friot.

[5] The plaintiff also lists Esgrow along with Friot in his second claim, but he makes no new allegations against him.  Therefore, the Court's analysis of the plaintiff's first claim against Esgrow, *supra*, suffices.

The Court finds that the plaintiff's amended second claim states a plausible claim that survives § 1915A screening.  A prisoner's free exercise claim must show that the disputed conduct substantially burdens his sincerely held religious beliefs.  *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006).  And any particular religious practice that is burdened must be "central or important" to the plaintiff's religion.  *Ford v. McGinnis*, 352 F.3d 582, 593-94 (2d Cir. 2003).

Ayers's claim meets those standards.  Specifically, Ayers alleges that Friot wrongfully seized his religious beads[6] and removed him from his "religious clerk position" because of Ayers's Nation of Islam religion.  These allegations state a claim that could constitute substantive violations of Ayers's First Amendment rights.  *See Franco*, 854 F.2d at 590 ("There is no question, however, that an inmate may resort to section 1983 in attempting to vindicate substantive rights arising out of such other provisions as the First Amendment . . . .").  Ayers's amended second claim under the First and Fourteenth Amendments in conjunction with § 1983 and the New York State Constitution therefore will not be dismissed at this time.

### 2.    Third Claim

The plaintiff also objects to Judge Foschio's dismissal with prejudice of his amended third claim against supervisory officials Venettozzi and Prack.[7]  Judge Foschio dismissed this claim both because it was moot in light of the dismissal of the first claim and because the plaintiff had failed to adequately allege the personal involvement of

---

[6] Although the defendants correctly state that a prisoner has no right to display beads, the plaintiff alleges that his religious property was seized and not returned—a more significant deprivation.  *See generally* 28 C.F.R. § 548.16 (defining inmate religious property to include prayer beads).
[7] The plaintiff also lists Esgrow along with Venettozzi and Prack in his amended third claim, but the Court's prior analysis of the plaintiff's claims against Esgrow suffices.

these supervisory officials.  *See* Docket Item 72 at 25.  Having screened the plaintiff's

amended third claim under § 1915A, the Court agrees with Judge Foschio.  *See Sealey*

*v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (stating that an omission to remedy any

alleged constitutional violation based upon a grievance does not establish requisite

personal involvement); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an

award of damages under § 1983.") (quotation omitted).

Although "[a] *pro se* complaint should not be dismissed 'without giving leave to

amend at least once when a liberal reading of the complaint gives any indication that a

valid claim might be stated,'"  *Engles v. Jones*, 144 F. Supp. 3d 413, 424 (W.D.N.Y.

2015) (quoting *Gray–Davis v. New York*, 2015 WL 2120518 at *3 (N.D.N.Y. May 5,

2015)), the plaintiff already has been given this opportunity.  *See* Docket Items 24 & 32.

Moreover, the claim against Venettozzi and Prack involves the plaintiff's disciplinary

hearing, and that claim is entitled to summary judgment in favor of the defendants for

the same reasons that the plaintiff's first claim is dismissed.  Because Ayers is no more

able to point to these defendants' personal involvement this time around, and because

these defendants would be entitled to summary judgment even if they were involved

personally, "it appears that granting leave to amend is unlikely to be productive," and

the Court therefore dismisses the plaintiff's amended third claim with prejudice.  *See*

*Ruffalo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

C.     **Motion for Further Discovery**

The plaintiff also moved for further discovery under Fed. R. Civ. P. 56(d).  *See*

Docket Item 59.  That motion is relevant only to the plaintiff's first claim, as the

defendants moved for § 1915A screening, not summary judgment, on Ayers's other

claims.

"Only in the rarest of cases" should a court award summary judgment against a

party "who has not been afforded the opportunity to conduct discovery."  *Hellstrom v.*

*U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (discussing Fed. R. Civ.

P. 56(c)).  But  the plaintiff's own motion for summary judgment indicates that he saw no

need for further fact gathering on his first claim.  Besides, in seeking this discovery,

Ayers provided a declaration that merely rearticulated the arguments made in

connection with his first claim. *See* Docket Item 59 at 3-5.  Thus, he has not provided

the Court with "any specific discoverable information he hope[s] to obtain by his

discovery requests that would have raised a material issue of fact."  *Vega v. Rell*, 611 F.

App'x 22, 26 (2d Cir. 2015); *see also  Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151

(2d Cir. 2016).  For these reasons, the Court denies the plaintiff's Rule 56(d) motion.

## CONCLUSION

For the reasons stated above, this Court adopts, in part, Judge Foschio's R&R

(Docket Item 72).  The Court denies the plaintiff's motion for partial summary judgment

on his first claim (Docket Item 38), grants the defendants' cross-motion for summary

judgment on that claim (Docket Item 47), and dismisses with prejudice the plaintiff's

amended third claim.  The Court also denies the plaintiff's Rule 56(d) motion for further

discovery (Docket Item 59).  The Court finds that the plaintiff's amended second claim

survives § 1915A screening, however, and therefore refers this case to Judge Foschio

for further handling of that claim.


      SO ORDERED.

Dated:  March 1, 2017
          Buffalo, New York

                              ***s/Lawrence J. Vilardo***
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE