UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HOWARD AYERS,

|                                        | REPORT |
| Plaintiff,                             | and |
| v.                                     | RECOMMENDATION |

J. ESGROW, Hearing Officer (CHO),                    12-CV-656V(F)
L. FRIOT, SCC,
D. VENETTOZZI, Acting Director (SHU), and
A. PRACK, Director Special Housing Unit,

Defendants.
_____

APPEARANCES:          BARCLAY DAMON, LLP
                      Attorneys for Plaintiff
                      CHARLES B. von SIMSON, and
                      SARAH ANNE O'BRIEN, of Counsel
                      200 Delaware Avenue
                      Suite 1200
                      Buffalo, New York  14202
                                    and
                      MICHAEL E. FERDMAN, of Counsel
                      1100 M&T Center
                      3 Fountain Plaza
                      Buffalo, New York  14203-1414

                      LETITIA A. JAMES
                      ATTORNEY GENERAL, STATE OF NEW YORK
                      Attorney for Defendants
                      KATHLEEN M. KACZOR
                      Assistant Attorney General, of Counsel
                      Main Place Tower
                      Suite 300A
                      350 Main Street
                      Buffalo, New York  14202

## **JURISDICTION**

This case was re-referred to the undersigned by Hon. Lawrence J. Vilardo on

March 2, 2017, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on Defendants' motion for summary judgment (Dkt. 125) filed September 10, 2018.

## **BACKGROUND**

On July 12, 2012, Plaintiff Howard Ayers ("Plaintiff"), then proceeding *pro se*, commenced this action alleging that while incarcerated at Elmira Correctional Facility Defendants, all employees of New York State Department of Corrections and Community Supervision, violated Plaintiff's civil rights by filing a false inmate misbehavior report for which Plaintiff was subsequently denied due process in connection with the disciplinary hearing held on the charged violations asserted in the inmate misbehavior report ("First Claim"), interfered with Plaintiff's First Amendment rights by having Plaintiff removed from his position as a religious clerk ("original Second Claim"), and retaliated against Plaintiff for filing inmate grievances ("IG") ("original Third Claim").  Defendants to this action include Corrections Hearing Officer J. Esgrow ("Esgrow"), Senior Corrections Counselor L. Friot ("Friot"), Acting Special Housing Unit ("SHU") Director D. Venettozzi ("Venettozzi"), and SHU Director A. Prack ("Prack").  By Order filed August 22, 2012 (Dkt. 2) ("August 22, 2012 Order"), after initially screening the Complaint pursuant to 28 U.S.C. § 1915A criteria, the First Claim alleging due process violations was allowed to proceed, but the original Second and Third Claims were not addressed.  On May 22, 2013, Defendants moved to dismiss the original Second and Third Claims (Dkt. 13), and in a Report and Recommendation filed September 24, 2014, the undersigned recommended dismissing both the original Second and Third Claims without prejudice and with leave to replead.  In an Order filed

December 18, 2014 (Dkt. 32), District Judge Richard J. Arcara adopted the undersigned's recommendation.  Accordingly, on February 6, 2015, Plaintiff filed amended Second and Third Claims (Dkt. 34) ("Amended Second Claim" and "Amended Third Claim").

On March 23, 2015, Plaintiff moved for partial summary judgment on his First Claim (Dkt. 38).  On April 30, 2015, Defendants cross-moved for summary judgment on all claims (Dkt. 47).  On August 24, 2015, Plaintiff moved for summary judgment on all claims (Dkt. 59).  In a Report and Recommendation filed March 30, 2016, the undersigned recommended granting summary judgment in Defendants' favor dismissing all of Plaintiff's claims (Dkt. 72) ("the R&R").  In a March 2, 2017 Decision and Order (Dkt. 82) ("the D&O"), District Judge Vilardo adopted the R&R except for the recommendation that summary judgment be granted as to Plaintiff's Amended Second Claim, finding issues of fact existed as to whether Defendant Senior Corrections Counselor Lawrence Friot ("Defendant" or "Friot") violated Plaintiff's First Amendment rights by removing Plaintiff from his position as a religious clerk and confiscating Plaintiff's prayer beads.  Judge Vilardo then re-referred the matter to the undersigned for further proceedings on Plaintiff's Amended Second Claim, limited to Defendant Friot's removal of Plaintiff from his religious clerk position ("religious clerk claim"), and confiscation of Plaintiff's prayer beads ("prayer beads claim").

By Order filed May 15, 2017 (Dkt. 97), the undersigned appointed Charles B. von Simson, Esq., of Barclay Damon, LLP, to represent Plaintiff in this matter.  Mr. Simson entered an appearance on September 27, 2017 (Dkt. 110), and Plaintiff has since proceeded in this action with legal representation.

On September 10, 2018, Defendant filed the instant motion seeking summary judgment on those portions of Plaintiff's Amended Second Claim that remain in the action, *i.e.*, Plaintiff's claim that Defendant Friot violated Plaintiff's First Amendment rights by removing Plaintiff from his religious clerk position and confiscating Plaintiff's prayer beads (Dkt. 125) ("Defendant's Motion").  Defendant's Motion is supported by the attached Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Dkt. 125-1) ("Defendant's Memorandum"), Defendant's Statement of Undisputed Facts (Dkt. 125-2) ("Defendant's Statement of Facts"), the Declaration of Lawrence Friot (Dkt. 125-3) ("Friot Declaration") with exhibits A through D ("Friot Declaration Exh(s). __"), the Declaration of Scott Kelly (Dkt. 125-4) ("Kelly Declaration"), the Declaration of Shelley Mallozzi (Dkt. 125-5) ("Mallozzi Declaration") with exhibits A and B ("Mallozzi Declaration Exh(s). __"), the Declaration of Joseph Martin (Dkt. 125-6) ("Martin Declaration") with exhibits A through D ("Martin Declaration Exh(s). __"), and the Declaration of Assistant Attorney General ("AAG") Kathleen M. Kaczor (Dkt. 125-7) with exhibits A through E ("Kaczor Declaration Exh(s). __").  In opposition to summary judgment, Plaintiff filed on December 14, 2018 the Declaration of Howard Ayers (Dkt. 133) ("Plaintiff's Declaration"), attaching exhibits A through O (Dkts. 133-1 through 133-15 ("Plaintiff's Exh(s). __"), and Plaintiff Howard Ayers' Memorandum of Law in Opposition to Defendant Lawrence Friot's Motion for Summary Judgment (Dkt. 133-16) ("Plaintiff's Response").  On January 4, 2019, Defendant filed Defendant's Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment (Dkt. 134) ("Defendant's Reply"), attaching the Friot Reply Declaration (Dkt. 134-1) ("Friot Reply Declaration").  Oral argument was deemed unnecessary.

Based on the following, Defendant's Motion should be GRANTED.

## FACTS[1]

At all times relevant to this action, Plaintiff Howard Ayers ("Plaintiff" or "Ayers"), an inmate in the custody of New York State Department of Corrections and Community Supervision, was housed at Elmira Correctional Facility ("Elmira" or "the correctional facility") and was a member of the Nation of Islam ("NOI") religion.   During this same time, Defendant Senior Corrections Counselor Lawrence Friot ("Defendant" or "Friot"), was the chairperson of Elmira's Inmate Programming Committee ("program chair") and responsible for inmate programs.  While Friot served as program chair, Plaintiff was chosen by the NOI chaplain for an assignment as general clerk in chaplain services in the mornings beginning August 27, 2007.  Friot remained program chair when Plaintiff's general clerkship was expanded to include mornings and afternoons between June 23 and August 10, 2008, when Plaintiff was promoted to Group Leader Assistant for the NOI religion ("religious clerk"), a position Plaintiff worked five days a week.  On May 17, 2009, Plaintiff was removed from his NOI religious clerk position for security reasons. Inmate Program Assignment History[2] at 004.  In a letter dated May 28, 2009 to then DOCCS Commissioner Brian Fischer ("May 28, 2009 Letter")[3] Plaintiff complained he was advised his removal from the religious clerk position was related to a disciplinary incident ("disciplinary incident") on August 31, 2005, when Plaintiff was incarcerated at Clinton Correctional Facility ("Clinton"), which Plaintiff was then challenging in a legal

---

[1] Taken from the pleadings and motion papers filed in this action.
[2] A copy of Plaintiff's Inmate Program Assignment History is filed as Friot Declaration Exh. A (Dkt. 12-3 at 8-18).
[3] Kaczor Declaration Exh. B (Dkt. 125-7 at 104-05).

action filed in the Northern District of New York as retaliation for exercising Plaintiff's

constitutional rights. The disciplinary incident involved Plaintiff's action in removing from

an NOI religious service call-out sheet the names of 22 inmates who then were not

permitted to attend the NOI service, and potentially jeopardized any removed inmate's

future attendance of NOI services which was disallowed if an inmate missed too many

services. Plaintiff's May 28, 2009 Letter further inquired whether Plaintiff, despite being

removed from his religious clerk position, remained eligible to attend NOI services. *Id*.

Plaintiff maintains that despite being removed from the religious clerk position, Plaintiff

continued acting in that capacity, including instructing other inmates on the NOI faith

and arranging for inmate call-outs for NOI services, except when in the presence of

Defendant Friot who regularly harassed Plaintiff about his membership in the NOI.

On September 28, 2009, Plaintiff was temporarily relocated from Elmira to Attica

Correctional Facility, from where Plaintiff was returned on October 16, 2009 ("the

temporary relocation"). According to one Joseph Martin ("Martin"), DOCCS Sergeant

and Supervisor of Elmira's transportation/draft area, Plaintiff was not transferred to

Attica, but rather was temporarily located at Attica "for a more limited purpose, such as

a court appearance or doctor's appointment and Elmira remained the owning facility."

Martin Declaration ¶¶ 1, 6. In connection with the temporary relocation, Form # 2064

("Form # 2064"),[4] a personal property inventory form, was completed by Corrections

Officer Cleveland ("Cleveland"). On Form # 2064, in the section pertaining to "Religious

Articles," the number "2" is written in the box next to "Rel. Books" indicating that among

Plaintiff's personal property were two religious books. The remaining boxes in the

---

[4] Martin Declaration Exh. C (Dkt. 125-6 at 22-23).

Religious Articles section including, *inter alia*, the boxes next to "Prayer Beads" and "Prayer Rugs" are empty, indicating Plaintiff possessed no other religious articles other than the two religious books.

Plaintiff claims that at some time "during the month of May" in 2011, Plaintiff placed his prayer or "dhikr" beads on a desk in the religious clerk's office while Plaintiff left to perform ablution (ritual washing). Amended Second Claim, Dkt. 34, ¶ 18. When Plaintiff returned, he observed Defendant Friot holding the prayer beads. *Id.* Plaintiff requested Friot return the prayer beads, but Friot responded he intended to investigate whether Plaintiff was permitted to possess the prayer beads. *Id.* ¶¶ 18-19. According to Plaintiff, as a gift from one Nelson Muhammad ("Muhammad"), the outside NOI representative[5] at Sing Sing Correctional Facility ("Sing Sing") where Plaintiff was housed from 1997 through 1999, the prayer beads were personally significant to him. Ayers Dep. Tr.[6] at 95, 160. Plaintiff never received the prayer beads back from Friot and although the beads were available for purchase from a store, Plaintiff did not attempt to obtain a replacement string and did not possess any such beads until 2013 when Plaintiff received a new string of prayer beads from his brother. Plaintiff never filed a lost property claim with regard to the prayer beads Plaintiff maintains Friot confiscated.

On June 7, 2011, Plaintiff was charged in an assertedly false Inmate Misbehavior Report ("the IMR") written by Friot based on information Friot received from Elmira Counselor Hillman that Plaintiff had demanded another inmate, "X" ("the victim"),

---

[5] Muhammad's specific religious title is not provided.
[6] References to "Ayers Dep. Tr." are to pages of the transcript of Plaintiff's Deposition, portions of which are filed as Kaczor Affidavit Exh. A (Dkt. 125-7 at 3-63).

preform sexual acts on Plaintiff.[7]  The incident allegedly occurred in August 2010 during

the NOI Ramadan holiday while Plaintiff and the victim were in Elmira's mess hall

preparing meals for the Ramadan holiday.  Upon receiving this information Friot, in

accordance with DOCCS's Sexual Abuse Prevention & Intervention Directive 4027A

("Directive 4027A"), interviewed the victim, then charged Plaintiff in the IMR[8] with

violating prison rules 101.10 (an inmate shall not engage in or encourage, solicit, or

attempt to force another to engage in any sexual act), and 102.10 (an inmate shall not,

under any circumstances, make any threat, spoken, in writing, or by gesture).  On June

9, 2011, Plaintiff was moved to Elmira's special housing unit ("SHU"), as a result of the

pending charges, and a Tier III disciplinary hearing on the IMR ("the disciplinary

hearing") commenced before DOCCS Hearing Officer James Esgrow ("Esgrow"), and

concluded on July 12, 2011, when Esgrow found Plaintiff guilty on the sex offense

charge, but not guilty on the threats charge.  Plaintiff maintains both the filing of the IMR

and the subsequent disciplinary hearing were based on Plaintiff's membership and

participation in the NOI religion.


## DISCUSSION

**1.    Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party

demonstrates that there are no genuine issues as to any material fact and that a moving

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex*

---

[7] This paragraph is included in the interest of completeness as the claim to which the facts are pertinent is recommended for dismissal based on abandonment.  *See* Discussion, *infra, at 10 n. 8.*
[8] Filed as Friot Declaration Exh. D (Dkt. 125-3 at 29-30).

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). The court is required to construe the evidence in the light most favorable to the non-moving party, *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011), and summary judgment may not be granted based on a credibility assessment. *See Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51, 55 (2d Cir. 2017) ("Adverse parties commonly advance conflicting versions of the events throughout a course of litigation. In such instances on summary judgment, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." (citations, quotation marks, and brackets omitted)). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). "A fact is material if it 'might affect the outcome of the suit under governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)). A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit

a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)). Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133,137 (2d Cir. 2009)).

In the instant case Defendant Friot, the only remaining Defendant to this action, argues in support of summary judgment that Plaintiff made misrepresentations in bad faith warranting dismissal of the action, Defendant's Memorandum at 3-6, Plaintiff failed to exhaust administrative remedies, *id.* at 6-12, and Plaintiff is unable to establish Defendant violated Plaintiff's First Amendment right to practice his religion with regard either to Plaintiff's removal from his religious clerk position or the confiscation of Plaintiff's prayer beads. *Id.* at 13-26.[9]

---

[9] Defendant asserts that although Judge Vilardo did not find Plaintiff could proceed with a First Amendment retaliation claim based on the filing of the alleged false IMR which Plaintiff's attributes to his religion, as well as on the subsequent disciplinary hearing on the charges in the IMR because Plaintiff reportedly stated at an April 5, 2017 Scheduling Conference (Dkt. 88) that he did intend to pursue such a

Initially, the court addresses Plaintiff's failure to fully comply with federal and local procedural rules in responding in opposition to summary judgment. Defendant maintains Plaintiff's failure to comply with the requirement of Fed.R.Civ.P. 56(e) ("Rule 56(__)") that Plaintiff properly support an assertion in opposition to each of Defendant's asserted statements of facts submitted in support of summary judgment requires the court deem such factual statements admitted. Defendant's Reply at 2-3. Plaintiff has not responded in opposition to this argument.

As relevant here, Rule 56(c) requires a party opposing summary judgment to cite to specific material in the record establishing the existence of a material issue of fact to avoid summary judgment on a claim, and Rule 56(e) permits, but does not require, the court to consider undisputed for the purposes of the motion any fact set forth by the movant which the nonmovant fails to properly address. Local Rule 56 of the Local Rules of Civil Procedure for the Western District of New York ("Local Rule 56(__)") goes a step further requiring a party moving for summary judgment submit a statement of separately enumerated paragraphs setting forth facts which the movant maintains are undisputed, Local Rule 56(a)(1), and the party opposing summary judgment is required to respond to each separately enumerated paragraph with correspondingly numbered paragraphs containing a short and concise statement explaining why the nonmovant maintains the movant's asserted facts are disputed. Local Rule 56(a)(2). Should the

---

claim, Defendant provides an argument in support of summary judgment of such claim. Defendant's Memorandum at 26-28. Plaintiff, however, does not argue in opposition to such claim. *See* Plaintiff's Response, *passim.* Accordingly, any such claim is deemed abandoned. *See Jackson v. Federal Express*, 766 F.3d 189, 195-96 (2d Cir. 2014) (holding where, as here, a counseled non-moving party submits "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others," that response "may be deemed an abandonment of the unmentioned claims," and even "[w]here abandonment by a counseled party is not explicit," a court may infer abandonment "from the papers and circumstances viewed as a whole.").

non-movant fail to provide the responding statement of facts, each of the movant's uncontroverted statement of facts may be deemed admitted.  *Id.*

In the instant case, although Plaintiff did not submit a separately enumerated statement of facts which Plaintiff maintains are disputed, such a statement is not required under Rule 56(c); rather, pursuant to Rule 56(e) the nonmovant's failure to specifically address each statement of fact permits the court to consider such facts admitted.  Fed.R.Civ.P. 56(e)(2) (permitting, *inter alia*, the court to "consider the fact undisputed for purposes of the motion" where the nonmovant "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c) . . . .").  A review of Plaintiff's papers opposing summary judgment establishes that Plaintiff does cite to specific portions of the record in opposing summary judgment, albeit not in the form of a statement of separately enumerated facts which, as just discussed, Rule 56 does not require.  With further regard to Plaintiff's failure to respond to each of Defendant's separately enumerated purportedly undisputed facts as required by Local Rule 56(a)(2), the unchallenged statements may be taken as true only insofar as such facts stated therein are supported by the record.  *See Marino v. Schult*, 764 Fed.Appx. 73, 74 (Apr. 4, 2019) ("If a non-moving party fails to comply with local rules governing summary judgment, a district court may rely on a moving party's statement of undisputed facts as long as those facts are supported by the record.") (citing *N.Y.S. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005)).  Accordingly, the court will consider undisputed any factual statement Defendant asserts is undisputed so long as such statement is supported by the record.

2.    **§ 1983 and Exhaustion of Administrative Grievances**

Plaintiff's claims seek damages for alleged violations of constitutional rights

pursuant to 42 U.S.C. § 1983 ("§ 1983"), which imposes civil liability upon persons who,

acting under color of state law, deprive an individual of rights, privileges, or immunities

secured by the Constitution and laws of the United States.  Section 1983, however, is

not itself a source of substantive rights but, instead, provides the mechanism by which a

plaintiff may seek vindication of federal rights elsewhere conferred.  *Graham v. Connor*,

490 U.S. 386, 393-94 (1989).  Here, Plaintiff's claims that Friot removed Plaintiff from

his religious clerk position and confiscated Plaintiff's prayer beads because Plaintiff is a

practicing member of the NOI allege violations of the First Amendment.

Defendant argues in support of summary judgment that Plaintiff failed to exhaust

administrative remedies relative to his First Amendment claims because the inmate

grievance Plaintiff filed as to his religious clerk claim was untimely, Defendant's

Memorandum at 8-9, Plaintiff never filed an inmate grievance concerning his prayer

beads claim, *id.* at 10, and Plaintiff cannot show that the grievance process was

unavailable.  *Id.* at 11-12.  Plaintiff argues in opposition that his grievance pertaining to

his religious clerk claim was timely filed because it pertained to a continuing violation by

Friot to place a substantial burden on Plaintiff's practice of his NOI faith, Plaintiff's

Response at 4-5, and that Plaintiff prepared a timely grievance pertaining to Friot's

confiscation of his prayer beads but that the grievance was never filed because it was

destroyed by the corrections officer to whom Plaintiff delivered the grievance for filing,

*id.* at 6-7, and that Plaintiff's subsequent transfer to SHU and then to Upstate

Correctional Facility ("Upstate") prevented Plaintiff from attempting to file another

grievance.  *Id.* at 7-9.  In further support of summary judgment, Defendant repeats the same failure to exhaust administrative remedies arguments.  Defendant's Reply at 4-5 (religious clerk claim), and 8-9 (prayer beads claim).  A review of the record establishes Plaintiff's First Amendment claims should be dismissed for failing to exhaust administrative remedies.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 ..., or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA requires "proper exhaustion," meaning exhaustion in "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  An administrative grievance that is untimely or otherwise fails to comply with procedural requirements does not exhaust administrative grievances.  *Id.* at 83-84.  "Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement."  *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citing cases).

As relevant here, DOCCS's regulations outline the procedures that apply to the Inmate Grievance Program ("IGP") at DOCCS correctional facilities.  The first step of the grievance process begins with the filing of a complaint with the correctional facility's grievance clerk ("IGP clerk") within 21 days of an alleged incident.  N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 7, § 701.5(a)(1) ("§ 701__").  An inmate may request an extension to file a grievance, but the request must be made in writing and within 45 days of the alleged occurrence, directed to the IGP clerk, and be based on "mitigating

circumstances." § 701.6(g)(1)(i)(a).  Upon filing, the IGP clerk numbers and logs the

grievances.  *Id.* § 701.5(a)(2).  The grievance then generally is subjected to three levels

of review.  *Williams*, 829 F.3d at 119–20.  The first review is by the inmate grievance

resolution committee ("IGRC"); the second review is by the correctional facility

superintendent; and the third review is by the central office review committee ("CORC").

*Williams*, 829 F.3d at 119 (citing §§ 701.1(c), 701.5).  Further, if an inmate is transferred

to another facility while a grievance is pending, a response to the grievance shall be

mailed to the inmate at the new facility, *id.* (citing § 701.6(h)(1)), in which case "[i]f the

grievant wishes to appeal, he or she must mail the signed appeal form back to the IGP

supervisor at the facility where the grievance was originally filed within seven calendar

days after receipt."  *Id.* at 120 (citing § 701.6(h)(2)).  "If an inmate wishes to file a new

grievance about an incident that occurred prior to a transfer, he must file the grievance

in the facility where he is currently housed, 'even if it pertains to another facility.'"  *Id.*

(citing § 701.5(a)(1)).  Here, the record establishes Plaintiff failed to administratively

exhaust either of his First Amendment Claims.

### A.    Religious Clerk Claim

With regard to Plaintiff's removal from his religious clerk position, although

Plaintiff maintains he was removed from the position at some unspecified time in 2010,

Plaintiff's Dep. Tr. at 53 (Plaintiff admitting he did not recall when he was removed from

the religious clerk position other than "sometime in 2010 I believe"), Defendant submits

evidence establishing Plaintiff's removal from the position occurred on May 17, 2009.

*See* Plaintiff's Inmate Program Assignment[10] at 4 (Dkt. 125-3 at 12) (documenting

---

[10] Friot Declaration Exh. A (Dkt. 125-3 at 8-20).

Plaintiff's removal from his religious clerk position for security reasons on May 17, 2009); *see also* Plaintiff's June 15, 2009 letter to Fischer[11] (Dkt. 125-7 at 104) (Plaintiff, in letter to then Commissioner Fischer, referring to his removal from his religious clerk position on May 12, 2009).[12]  Despite Plaintiff's Inmate Program Assignment record, the accuracy of which Plaintiff does not dispute, indicating Plaintiff was removed from the position on May 17, 2009, even presuming for the sake of this discussion that Plaintiff was not removed from the religious clerk position until December 31, 2010, Plaintiff's filing of the relevant inmate grievance on July 12, 2011 ("clerk grievance"),[13] was well beyond the 21 days provided by the applicable regulation, 7 NYCRR § 701.5(a)(1), for filing the complaint, *i.e.*, January 21, 2011, 21 days after December 31, 2010.  Nor is there any indication in the record that Plaintiff sought an extension of time to file the inmate grievance and Plaintiff does not argue he did.

In opposing summary judgment on his religious clerk claim, Plaintiff maintains that his removal from the religious clerk position was part of a continuing violation Plaintiff outlined in his clerk grievance involving Friot and others whom Plaintiff maintains engaged in a continuous series of unlawful actions intended to interfere with Plaintiff's practice of his religion in violation of the First Amendment.  Plaintiff's Response at 4-5.  However, as Defendant counters, Defendant's Reply at 4-5, the continuing violation doctrine pertains to issues involving statutes of limitations, and no court has applied the doctrine in the context of an asserted untimely inmate grievance.  Not only does Plaintiff fail to cite to any relevant caselaw in support of this novel

---

[11] Kaczor Declaration Exh. B at Bates 40-41 (Dkt. 125-7 at 104-05).
[12] There is no explanation for the five day discrepancy between May 12 and May 17, 2009, but the discrepancy has no bearing on this discussion.
[13] Plaintiff's Declaration Exh. L (Dkt. 133-12).

argument, but the court's research also fails to find any. Rather, the caselaw Plaintiff cites in support, Plaintiff's Response at 4-5, including, *inter alia*, *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994), and *Laureano v. Goord*, 2007 WL 2826649, at * 4 (S.D.N.Y. Aug. 31, 2007), *report and recommendation adopted by* 2007 WL 2852770 (S.D.N.Y. Sept. 28, 2007), are inapposite insofar as in those cases the courts applied the continuing violation doctrine in the context of the statute of limitations pertaining to a complaint filed by a prison inmate to commence a legal action such as the instant § 1983 action, but not in the context of the filing of an administrative grievance under DOCCS regulations. Furthermore, the Supreme Court specifically instructs "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." *Ross v. Blake*, __ U.S. __; 136 S.Ct. 1850, 1862 (2016) (rejecting appellate court's excusing inmate plaintiff's failure to exhaust administrative remedies based on such "special circumstances" as the inmate actually believed his failure to exhaust available administrative remedies was justified). Thus, the record establishes Plaintiff failed to timely exhaust his religious clerk claim.

### B.    Prayer Beads Claim

That Plaintiff did not exhaust administrative remedies with regard to Friot's May 2011[14] confiscation of his prayer beads is undisputed. Plaintiff, however, maintains he was not required to exhaust such remedies because the inmate grievance procedure was not available. Plaintiff's Response at 6. According to Plaintiff, he prepared a timely grievance about the confiscation of his prayer beads ("prayer beads grievance"), but it was never filed initially because Plaintiff was led to believe by DOCCS officials,

---

[14] Plaintiff does not specify the date his prayer beads were confiscated. See Amended Complaint ¶ 18 (Dkt. 34 at 6, ¶ 18 (averring in 2011 Plaintiff's prayer beads were confiscated "during the month of May")).

including Friot, that the prayer beads would be returned, *id*. at 6-7, when Plaintiff finally

handed the prayer beads grievance to Friot to be filed, Friot ripped up the grievance, *id*.

at 7, subsequent to which Plaintiff was transferred to Upstate Correctional Facility

("Upstate"), where Plaintiff was advised to file a grievance regarding Friot's destruction

of his prayer beads grievance, *id*., which Plaintiff did and which was denied.  *Id*.  In

further support of summary judgment, Defendant argues Plaintiff's assertion that he

delayed filing the prayer beads grievance because he believed the matter would be

informally resolved with the prayer beads returned to him does not avoid summary

judgment because Plaintiff's attempt to informally resolve the problem did not excuse

Plaintiff from filing the formal grievance, Plaintiff's Reply at 8, nothing prevented Plaintiff

from filing such grievance, *id*., and Plaintiff's placement in SHU did not prevent Plaintiff

from filing an inmate grievance regarding the confiscation of his prayer beads.  *Id*.  A

plain review of the record establishes Plaintiff's failure to administratively grieve the

confiscation of his prayer beads cannot be excused.

As stated, Plaintiff does not deny he never formally grieved the confiscation of his

prayer beads, but maintains he was excused from doing so because the procedures for

doing so were not available to him.  Plaintiff's Response at 6-7.  An administrative

procedure is unavailable when (1) "'it operates as a simple dead end—with officers

unable or consistently unwilling to provide any relief to aggrieved inmates'"; (2) it is " 'so

opaque that it becomes, practically speaking, incapable of use'"; or (3) "'prison

administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation.'"  *Williams*, 829 F.3d at 123–24 (quoting

*Ross*, 136 S.Ct. at 1859–60).  Even if Plaintiff's arguments asserted in opposition to

summary judgment could establish that the administrative remedies were unavailable, such belated arguments made for the first time in opposing dismissal are insufficient. *See LionKingzula v. Jayne*, 714 Fed.Appx. 80, 82 (2d Cir. Mar. 13, 2018) (affirming grant of summary judgment where, prior to filing papers in opposition to summary judgment, the record was devoid of any indication the plaintiff had otherwise exhausted administrative remedies).  Accordingly, Plaintiff's belated and self-serving assertions, in opposition summary judgment, are insufficient to avoid dismissal of his prayer beads claim for failure to timely exhaust administrative remedies.

Summary judgment should thus be GRANTED in favor of Defendant based on Plaintiff's failure to exhaust administrative remedies relative to both his religious clerk position and prayer beads claims.  Although the undersigned recommends granting summary judgment on both Plaintiff's First Amendment claims based on Plaintiff's failure to exhaust administrative remedies, because the matter is before the undersigned for a report and recommendation, Defendant's remaining arguments are addressed in the interest of completeness.

3.    **Misrepresentations**

Defendant maintains that on the form complaint Plaintiff used to filed his original Complaint Plaintiff, in response to the question regarding whether Plaintiff filed any other federal lawsuits in federal court relating to Plaintiff's imprisonment, made material misrepresentations by failing to disclose several cases, including in particular *Ayers v. Selsky*, 07-CV-466 (N.D.N.Y.) ("*Ayers v. Selsky*"), filed in the Northern District of New York concerning an August 31, 2005 inmate misbehavior report ("2005 IMR") Plaintiff

received while incarcerated at Clinton Correctional Facility ("Clinton").[15]  Defendant's

Memorandum at 3-6.  According to Defendant, because the 2005 IMR at issue in *Ayers*

*v. Selsky* undermines Plaintiff's argument in the instant case, Plaintiff's failure to list the

case on the original form complaint establishes a violation of Fed.R.Civ.P. 11(b)'s ("Rule

11(b)") requirement, as relevant here, that by presenting to the court a signed pleading

an unrepresented party certifies to the best of his knowledge, information and belief that

the factual contentions have evidentiary support.  *Id.*  A violation of Rule 11(b) may

subject the noncomplying party to sanctions, including dismissal of the action.

Fed.R.Civ.P. 11(c).  In opposition, Plaintiff argues when he filed the Complaint he was

proceeding *pro se* and did not believe he needed to list on the complaint form cases

that were not filed in the Western District of New York such that the omission was not

"overtly dishonest" as required for dismissal under Rule 11.  Plaintiff's Response at 3.

Defendant did not further argue in support of summary judgment on this ground.

According to Defendant, Plaintiff purposefully omitted listing *Ayers v. Selsky*

because in that case, the District Court found Plaintiff admitted the underlying charges

in the 2005 IMR, particularly that Plaintiff, despite not being an approved NOI facilitator

at Clinton, submitted a prison call-out list on which Plaintiff had removed the names of

22 inmates previously permitted to attend NOI religious meetings "in an attempt to

subvert" NOI meetings, which potentially could cause disorganization and chaos within

the correctional facility, and thus was considered a threat to the facility's safety and

security.  *Ayers v. Selsky*, 2010 WL 408442, at *10 (N.D.N.Y. Jan. 27, 2010), *aff'd*, 467

---

[15] Although Defendant maintains Plaintiff failed to list several other cases, Plaintiff's Memorandum at 4 & n. 3, the court limits its consideration of Plaintiff's to failure to include all cases to *Ayers v. Selsky* on which Defendant's argument focuses.

Fed.Appx. 45 (2d Cir. 2012).  Relevantly, in his May 28, 2009 Letter to Fischer, Plaintiff attributed his removal from the religious clerk position in 2009 to the 2005 IMR which assertion Defendant maintains establishes Friot was not involved in removing Plaintiff from the religious clerk assignment while Plaintiff was housed at Elmira.  Defendant's Memorandum at 5-6.

In support of the argument that Plaintiff's failure to list *Ayers v. Selsky* on the form complaint requires dismissal of the instant action based on material misrepresentations Defendant notes, Defendant's Memorandum at 4 n. 4, that in *Dolberry v. Silvernail*, 620 Fed.Appx. 34 (2d Cir. 2015), the Second Circuit limited its reversal of the district court's dismissal under Rule 11 of the inmate plaintiff's complaint for failure to list all prior actions on the form complaint to the fact that the plaintiff testified he interpreted the form as referring only to lawsuits filed during the inmate's current period of incarceration.  Defendant's reading of *Dolberry*, however, is inapposite as a plain reading of the case establishes the Second Circuit not only found credible the inmate plaintiff's assertion of confusion regarding whether the relevant form complaint question called for listing all actions ever filed by the plaintiff inmate during any period of incarceration or only the current period of incarceration, but also whether such lawsuits pertained to the reason for the plaintiff's incarceration.  *Dolberry*, 620 Fed.Appx. at 35-36.  Accordingly, the Second Circuit held the very same question on the form complaint at issue in *Dolberry*, *i.e.*, "[h]ave you begun any other lawsuits in federal court which relate to your imprisonment?" to be sufficiently ambiguous to excuse the plaintiff's failure to list all seven previously filed federal lawsuits.  *Id.* at 37.  Similarly, in the instant case, as the Second Circuit found in *Dolberry*, Defendant's assertion that Plaintiff must

have realized he had failed to include all other cases commenced in federal court during his current period of incarceration, especially *Ayers v. Selsky*, does not necessarily require dismissal of the action based on a violation of Rule 11 because the inartfully phrased question could be interpreted as pertaining to cases concerning the reason for Plaintiff's incarceration.  Furthermore, *Ayers v. Selsky*, although commenced during Plaintiff's current period of incarceration, was filed in the Northern District of New York, rather than in this district, another potential source of confusion in light of the ambiguous question.[16]

Defendant's motion for summary judgment should thus, in the alternative, be DENIED with regard to this argument.

## 4.    First Amendment

As a further alternative, the undersigned addresses whether summary judgment should be granted on the merits of Plaintiff's claims, both of which challenge his removal from the religious clerk position and the confiscation of his prayer beads thus asserting violations of the First Amendment right to freely exercise one's religion.  Courts have recognized that "convicted prisoners do not forfeit all constitutional protections by reason of their confinement in prison."  *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (quoting *Bell v. Wolfish,* 441 U.S. 520, 545 (1979)).  Inmates' retained constitutional protections include the First Amendment's Free Exercise Clause.  *Id.* ("Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.") (citations omitted).

---

[16] Although, given Plaintiff's apparent familiarity with § 1983 litigation, it is doubtful Plaintiff was in fact confused by the question pertaining to claims pertaining to prior incarceration; nevertheless, Defendant's contention should be rejected in keeping with the Second Circuit's holding in *Dolberry*.

Constitutional protections afforded to inmates must be balanced against the interests of prison officials charged with complex duties that arise from administering the prison system, *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990), and a prison regulation that affects inmates' constitutional rights is valid if "reasonably related to legitimate penological interests."  *O'Lone,* 482 U.S. at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)).  Before a court can balance the inmate and the prison administrators' interests, however, an inmate plaintiff must allege how the conduct infringes his freedom to exercise his religion, *Candelaria v. Coughlin,* 787 F.Supp. 368, 37677 (S.D.N.Y.1992), for it is basic that a religious liberty claim requires the prisoner demonstrate "that the disputed conduct substantially burdens his *sincerely held religious beliefs.*"  *Salahuddin v. Goord,* 467 F.3d 263, 274–75 (2d Cir.2006) (italics added) (citing *Ford v. McGinnis,* 352 F.3d 582, 587 (2d Cir.2003) (First Amendment Free Exercise Clause)).  Further, the practice allegedly interfered with must be an essential tenet of the religious faith, and to avoid summary judgment the plaintiff must establish an issue of fact.  *See Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) ("Because [the plaintiff] has neither alleged nor submitted any proof that he sincerely holds to any religious belief that mandates the use of Tarot cards, we conclude that summary judgment was appropriate on the free exercise claim.").  Although the court is precluded on summary judgment from weighing facts so as to determine the sincerity of Plaintiff's religious beliefs, *Jackson,* 196 F.3d at 320, the court is permitted to determine whether, as a matter of law, Defendant's conduct challenged by Plaintiff "substantially burdens" Plaintiff's practice of his religion by interfering with or violating a key tenet of Islam. *Salahuddin,* 467 F.3d at 274-75; *Ford,* 352 F.3d at 587.

## A.    Removal from Religious Clerk Position

Plaintiff argues Defendant Friot's claim that he was removed from his religious clerk position because of his religious affiliation with NOI in violation of Plaintiff's First Amendment rights is time-barred by the applicable three-year statute of limitations, Plaintiff's Memorandum at 14-15, that Friot was not personally involved in removing Plaintiff from the religious clerk position, *id.* at 15, that the removal of Plaintiff from the religious clerk position did not substantially burden Plaintiff's practice of his religion, *id.* at 15-17, DOCCS had a legitimate reason for removing Plaintiff from the position, *id.* at 17-18, and Plaintiff is unable to show Defendant Friot purposefully discriminated against him.  *Id.* at 18-19.  In opposition, Plaintiff argues Defendant's conduct in removing Plaintiff from his religious clerk position was part of an continuing pattern of religious discrimination against Plaintiff such that it is not time-barred, Plaintiff's Response at 9, Friot purposefully and substantially interfered with Plaintiff's religious beliefs by preventing Plaintiff from performing his religious clerk duties, *id.* at 11-12, and there is no basis to Defendant's argument that Plaintiff's removal from the religious clerk position was supported by DOCCS security concerns.  *Id.* at 12.  In further support of summary judgment, Defendant maintains Plaintiff has not controverted the evidence Defendant presents that Plaintiff's removal from the religious clerk position was predicated on security concerns and that Friot was not involved in the decision to remove Plaintiff from the position, Defendant's Reply at 2-4, the removal of Plaintiff from the religious clerk position did not substantially burden Plaintiff's free exercise of his religion because Plaintiff is not entitled to any particular prison position such as religious

clerk, *id.* at 5, and the claim is not timely based on the continuing violation doctrine. *id.* at 6, are without merit. In the instant case, the record supports Defendant's arguments.

In particular, Plaintiff's First Amendment claim based on his removal from the religious clerk position is subject to a three-year statute of limitations measured from Plaintiff's removal on May 17, 2009 such that Plaintiff's filing of this action on July 12, 2012, was untimely. Plaintiff's § 1983 claims are subject to a three-year limitations period. *Shomo v. City of N.Y.,* 579 F.3d 176, 181 (2d Cir.2009) (applicable statute of limitations for a § 1983 action arising in New York State is three years). As such, Plaintiff's First Amendment claim challenging the May 17, 2009 removal from his religious clerk position should have been filed by May 17, 2012, and Plaintiff's failure to file the instant action until July 12, 2012 establishes such claim is time-barred.

Plaintiff, however, maintains Defendant's conduct that prevented Plaintiff from performing his religious clerk duties was a continuing violation that continued through June 2011 such that Plaintiff's filing of his Complaint on July 12, 2012 was well within the three-year limitations period accruing in June 2011. Plaintiff's Response at 9. In further support of summary judgment, Defendant argues Plaintiff fails to show compelling circumstances warranting application of the continuing violation doctrine, asserting Plaintiff alleges only multiple incidents of discrete acts of discrimination. Defendant's Reply at 6.

"The continuing violation doctrine, where applicable, provides an exception to the normal knew-or-should-have-known accrual date" and "applies to claims composed of a series of separate acts that collectively constitute one unlawful [ ] practice" based on the occurrence of an actual injury to the plaintiff. *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d

Cir. 2015)[17] (internal quotations omitted).  "The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation[ ],' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment."  *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002)).  "[W]here the continuing violation doctrine applies, the limitations period begins to run when the defendant has 'engaged in enough activity to make out an actionable . . . claim.'"  *Id.* at 220 (quoting *Morgan*, 536 U.S. at 117).  A claim, however, will be timely under the doctrine "only if the plaintiff 'allege[s] . . . some non-time-barred acts' contributing to the alleged violation."  *Id.* (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).

Although the continuing violation doctrine typically arises in the context of employment discrimination, the doctrine has been applied in the context of § 1983 actions commenced by prison inmates asserting Eighth Amendment violations based on deliberate indifference to an inmate's serious medical needs, *Gonzalez*, 802 F.3d at 220-21 (citing cases), and challenging the conditions in SHU confinement, *id.* at 224 (recognizing the continuing violation doctrine should apply to Eighth Amendment claims based on SHU confinement because such claims "typically accrue[ ] only after an inmate has been confined in the SHU for a prolonged period of time").  The continuing doctrine violation, however, does not apply to all prison inmate civil rights claims, including claims alleging denial of due process in violation of the Fourteenth

---

[17] Although *Gonzalez* was a civil rights action against federal actors pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), the Second Circuit recognized "[b]oth *Bivens* and section 1983 actions are designed to provide redress for constitutional violations.  Though the two actions are not precisely parallel, there is a general trend in the appellate courts to incorporate § 1983 law into *Bivens* suits."  *Gonzalez*, 802 F.3d at 221.

Amendment. *Id.* at 223. Here, Plaintiff does not reference, any case in which the continuing violation doctrine was applied to an inmate's § 1983 claim for interference of the exercise of religion in violation of the First Amendment, yet the Second Circuit in *Gonzalez* acknowledged the possible availability of the continuing violation doctrine to save an otherwise untimely First Amendment retaliation claim but for the inmate plaintiff's failure to allege any retaliatory decisions after the expiration of the relevant limitations period. *Id.* at 222.

In the instant case, the continuing violation doctrine is inapplicable to Plaintiff's First Amendment claim based on his removal from the religious clerk position. Specifically, both Plaintiff's religious clerk claim and prayer beads claim are alleged in Plaintiff's Amended Second Claim (Dkt. 34), for which the majority of the allegations generally assert Defendant Friot harassed Plaintiff about his membership in the NOI. Most of the allegations in Plaintiff's Amended Second Claim, however, are not accompanied by dates such that it is not possible to determine when the alleged conduct occurred. Further, in the D&O, Judge Vilardo only permitted Plaintiff's Amended Second Claim to continue with respect to Plaintiff's removal from his religious clerk position in May 2009, and the alleged confiscation of Plaintiff's prayer beads two years later in May 2011. D&O at 14-15. As such, the court's consideration of Plaintiff's Amended Second Claim is limited to these two discrete incidents rather than "a 'serial violation[ ]'" accruing "only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez*, 802 F.3d at 220 (quoting *Morgan*, 536 U.S. at 114-15). Accordingly, the continuing violation doctrine is inapplicable to Plaintiff's religious

clerk claim which is time-barred. Defendant Friot should thus be granted summary judgment on the claim.

Alternatively, should the district judge disagree that Plaintiff's First Amendment claim based on his removal from his religious clerk position accrued on May 17, 2009, either because of some doubt regarding the accuracy or veracity of the evidence Defendant submits in support of summary judgment including a copy of Plaintiff's Inmate Program Assignment report showing Plaintiff's removal from the position on May 17, 2009 based on security concerns, as well as Plaintiff's own deposition testimony, or that this otherwise time-barred claim is saved by the continuing violation doctrine, the Defendant nevertheless is entitled to summary judgment based on a lack of personal involvement in the removal of Plaintiff from the religious clerk position. To establish liability under § 1983, a plaintiff must show the defendant was personally involved in the alleged constitutional violation. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir. 2003). Defendant argues in support of summary judgment that Plaintiff cannot establish Friot was personally involved in removing Plaintiff from the religious clerk position. Defendant's Memorandum at 15. According to Defendant, although Friot, as Elmira's Program Committee Chairperson, generally reviewed all records and recommendations regarding inmate's program assignments, where, as here, the correctional facility's security staff determines an inmate's particular program placement poses a threat to the correctional facility's safety and security, the decision to remove an inmate from such position is made by either the Deputy Superintendent for Program Services or at DOCCS Central Officer level, but not by the Program Committee Chairperson. *Id.*; Friot Declaration ¶¶ 13-14, 17 and Exh. B. Friot further explains that Plaintiff's removal from

his religious clerk position was pursuant to DOCCS Directive 4803 § IX.B(3) ("Directive 4803 __" or "the Directive")[18] which, as relevant, provides that

> The Program Committee Chairperson shall be responsible for all program assignments and removals [ ].  The Chairperson shall:
>
> * * *
>
> 3.    prior to making or changing an inmate's assignment or program (except in cases in which an immediate removal for the safety and security of the facility <u>is required and is approved by</u> the Deputy Superintendent for the Program Services), the Program Committee Chairperson shall review all records and recommendations regarding the inmate's specific program needs and consider the skills, aptitude, and custodial history of the inmate in conjunction with the specific facility needs . . .."

Directive 4803 § IX.B(3) (underlining added).

Plaintiff does not dispute Defendant's argument, supported by the Directive that Friot alone was without anything other than ministerial authority to remove Plaintiff from his religious clerk position based on the decision of the Deputy Superintendent.  Plaintiff's silence on this point is consistent with Plaintiff's May 28, 2009 Letter to then DOCCS Commissioner Fischer, in which Plaintiff attributed his removal from the religious clerk position to retaliation for challenging in a separate legal action a disciplinary incident that occurred on August 31, 2005 when Plaintiff was incarcerated at Clinton, but does not mention Friot.  Accordingly, Plaintiff has failed to demonstrate the existence of a material issue of fact countering Defendant's evidence that Friot was not personally involved in removing Plaintiff from his religious clerk position, which pursuant to the Directive resulted from a decision of the Deputy Superintendent for Program Services, supporting summary judgment in Defendant's favor on this claim.

---

[18] Copy filed as Friot Declaration Exh. B (Dkt. 125-3 at 21-24).

As a further alternative, Plaintiff cannot avoid summary judgment on the merits of this claim because, as Defendant argues, Plaintiff cannot establish the termination of his assignment as the NOI religious clerk substantially interfered with Plaintiff's exercise of his NOI religion which is a threshold requirement for liability on Plaintiff's First Amendment exercise of religion claim. Defendant's Memorandum at 15-17. In particular, as Defendant maintains, *id.* at 17; Defendant's Reply at 5, Plaintiff had no constitutionally protected right to any particular prison job including the NOI religious clerk position at Elmira. *See Muhammad v. Warithu-Deen Umar*, 98 F.Supp.2d 337, 345 (W.D.N.Y. 2000) (granting summary judgment on inmate plaintiff's First Amendment claim alleging denial of right to the free exercise of religion based on defendant DOCCS employee's refusal to assign Plaintiff as NOI religious clerk because "[i]t is well established that inmates in the DOCS system do not have any constitutional, statutory, regulatory or precedential right to a particular prison job." (citing *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987))). Significantly, Plaintiff offers no argument to the contrary on this point. Moreover, Plaintiff fails to establish a material issue of fact that his assignment to the NOI religious clerk position was required as a basic tenet of his NOI religion such that his removal interfered with his First Amendment right. *Farid*, 850 F.2d at 926.

Defendant further argues Plaintiff's deposition testimony that he continued to perform the same duties with respect to the NOI religious services after being removed from the religious clerk position establishes the removal did not interfere with Plaintiff's First Amendment right. Defendant's Memorandum at 16. Plaintiff specifically asserts that one week after he was removed from the religious clerk position, Plaintiff was

authorized by Elmira's Islam chaplain to continue performing the religious clerk duties including conducting the callouts for NOI services, Plaintiff's Statement of Facts ¶ 50, as well as teaching other inmates about the practices of NOI, and assumed a position as Elmira's ranking NOI member who developed plans to grow and develop NOI within the correction facility's prison ministry which were reported to NOI leaders outside the correctional facility, Plaintiff's Dep. Tr. at 31, 33, 53, 68, 71, 93, 101, and 110, but that Friot interfered with such conduct by Plaintiff.  Plaintiff's Statement of Facts ¶¶ 51-52 (asserting Defendant's argument ignores Plaintiff's assertion that whenever Friot was around, Plaintiff was not free to act as the NOI religious clerk).  Plaintiff's Response at 12.  Even if true, that Friot interfered with Plaintiff's continued performance of NOI religious clerk duties after being officially removed from the position does not avoid summary judgment because Plaintiff,  who was not then assigned to the NOI religious clerk in accordance with Inmate Program Placement Directive 4803, had no right to act in that capacity and Plaintiff points to no caselaw to the contrary, nor does Plaintiff challenge the directive as unconstitutional.[19]

---

[19] With regard to Defendant's argument, Defendant's Memorandum at 18-19, that Friot's approval of both the decision to assign Plaintiff to the religious clerk position and the subsequent promotion of Plaintiff to the NOI assistant group leader position is inconsistent with Plaintiff's claim that Friot removed Plaintiff from the religious clerk position, the court notes that Defendant attempts to apply the "same-actor inference" applicable to employment discrimination actions to Plaintiff's § 1983 claim.  The so-called "same-actor inference" provides that "where the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire."  *Schnable v. Abramson,* 232 F.3d 83, 91 (2d Cir.2000). the same-actor inference, however, requires the weighing of facts making its application on a summary judgment motion improper.  *See Copeland v. Rosen,* 38 F.Supp.2d 298, 305 (S.D.N.Y.1999) (rejecting "defendants' contention that the 'same actor' inference *mandates,* at the summary judgment stage or any other, that no inference of discriminatory intent may be drawn . . . [because] [t]he 'same actor' inference is not a necessary inference, it is only a plausible one, and decisions in this Circuit addressing it have warned that its use is not to become a substitute for a fact-intensive inquiry into the particular circumstances of the case at hand." (citing cases) (italics in original).  Accordingly, the court does not further address Defendant's same-actor inference argument.

Moreover, other than no longer being permitted to act as the NOI religious clerk, to which Plaintiff had no constitutionally protected right and as to which Plaintiff has failed to support involved a fundamental tenet of the NOI religion, Plaintiff does not describe anything he was unable to do pertaining to his religion, nor does Plaintiff explain the more basic premise of why retention of his NOI religious clerk position was necessary for Plaintiff to practice his religion especially given that Plaintiff admitted he thereafter was able to engage in all practices of the religion. Plaintiff's Dep. Tr. at 102 (Plaintiff testifying he "had everything I needed" to practice his religion). Significantly, Plaintiff describes that despite being removed as NOI religious clerk, he remained able to participate in all NOI religious holidays, Plaintiff's Dep. Tr. at 45-47, engage in wudu (Islamic ritual washing), *id.* at 99, wear a bow tie, *id.* at 101, read NOI newspapers, *id.*, and read and possess religious books and pamphlets including, *inter alia*, the Quran. *Id.* at 93. Plaintiff, however, never explains that being assigned to the NOI religious clerk position was necessary for Plaintiff to practice his religion. *Farid*, 850 F.2d at 926. Plaintiff may thus not avoid summary judgment on this aspect of his religious clerk claim.

Further, Plaintiff has admitted DOCCS's purported reason for removing him from the religious clerk position was valid. *See* May 28, 2009 Letter at 2 (Dkt. 125-7 at 104) (Plaintiff explaining to Fischer Plaintiff had no problem with the decision to removal him from the religious clerk position based on the discovery of Plaintiff's involvement in the August 31, 2005 disciplinary incident). As Friot maintains, Defendant's Memorandum at 18, and Plaintiff does not dispute, had Elmira's Program Committee been aware of the disciplinary incident in which Plaintiff, without any authority to do so, while at Clinton,

removed from the NOI service callout sheet the names of 22 inmates who signed up to attend NOI religious services, Plaintiff never would have been assigned to the NOI religious clerk position at Elmira.  Plaintiff thus cannot challenge his removal from the religious clerk position as in violation of the First Amendment.

Accordingly, summary judgment should be GRANTED in favor of Defendant on the merits of Plaintiff's First Amendment claim based on the termination of Plaintiff's religious clerk position.

### B.    Confiscation of Prayer Beads

In support of summary judgment on Defendant's First Amendment claim based on the confiscation of his prayer beads Defendant argues the matter which was not alleged until Plaintiff filed the Amended Second Claim on February 6, 2015, is time-barred, Defendant's Memorandum at 20-21, there is no record that Plaintiff was ever in possession of the subject prayer beads, *id.* at 21-22, the confiscation of the prayer beads did not work a substantial burden on Plaintiff's exercise of his NOI religion, *id.* at 22-24, and Plaintiff's use of the prayer beads was in violation of DOCCS Directives.  *Id.* at 24-26.  In opposition to summary judgment, Plaintiff argues his prayer beads claim is timely because it relates back to the original Complaint filed July 12, 2012, Plaintiff's Response at 9-11, and Plaintiff's possession of his religious beads was constitutionally protected such that Friot's confiscation of Plaintiff's religious beads violated Plaintiff's First Amendment rights.  *Id.* at 12-13.  In further support of summary judgment, Defendant maintains that because the original Complaint is bereft of any mention of prayer beads, it was insufficient to place Defendant on notice of any potential claim based on Friot's alleged confiscation of such beads, Defendant's Reply at 6-9, and

Plaintiff's admission that he did not need the prayer beads to recite prayers in exercising his faith establishes the confiscation of the prayer beads did not substantially burden Plaintiff's exercise of his religion. *Id.* at 9-10. A review of the relevant law establishes Plaintiff's prayer beads claim is time-barred, but alternatively, issues of fact exist precluding summary judgment on the claim.

With regard to Defendant's argument that Plaintiff's prayer beads claim is time-barred, as with Plaintiff's religious clerk position claim, Plaintiff's First Amendment claim based on the confiscation of his prayer beads is also subject to a three-year statute of limitations measured from the May 2011 confiscation. *Shomo,* 579 F.3d at 181. As such, Plaintiff's First Amendment claim challenging the May 17, 2009 removal from his religious clerk position should have been filed by May 17, 2012, and Plaintiff's failure to file the instant action under July 12, 2012 establishes such claim is time-barred unless the filing of the Amended Second Claim on February 6, 2015 relates back to the filing on the original Complaint on July 12, 2012. Whether such claim is timely depends on how the Amended Second Claim "relates back to the original pleading pursuant to Fed.R.Civ.P. 15(c)(1)(B)." *Ridge Seneca Plaza, LLC v. BP Prod. N. Am. Inc.*, 545 Fed.Appx. 44, 46-47 (2d Cir. 2013). Specifically, "[f]or a newly-added action to relate back, the 'basic claim must have arisen out of the conduct set forth in the original pleading.'" *Id.* (quoting *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotation omitted). "[E]ven when an amended complaint tracks the legal theory of the first complaint, claims that are based on an 'entirely distinct set' of factual allegations will not relate back." *Id.* (quoting *Nettis v. Levitt*, 241 F.3d 186, 193 (2d Cir. 2001)).

In the instant case, because the original Complaint is devoid of any mention of Plaintiff's prayer or dhikr beads, the prayer beads claim, asserted for the first time in the Amended Second Claim, is based on an "entirely distinct set of factual allegations and will not relate back." *Ridge-Seneca Plaza, LLC*, 545 Fed. Appx. at 46-47. Significantly, Plaintiff does not argue otherwise, nor does Plaintiff reference any allegation in the original Complaint putting Friot on notice that Plaintiff intended to assert a First Amendment claim against Friot based on the confiscation of prayer beads. As such, the prayer beads claim does not relate back but is time-barred, supporting granting Defendant summary judgment on the claim.

Alternatively, both Plaintiff's assertions that he wore his prayer beads under his shirt, Amended Second Claim ¶ 17, and that he left the prayer beads unattended on the religious clerk desk while Plaintiff entered into a nearby bathroom to perform ablution, *id.* ¶ 18, state violations of DOCCS Directive 4202 § N.2.b ("Directive 4204 __")[20] that "Dhikr beads may be possessed in one's hands but not worn or displayed . . . ." According to Scott Kelly ("Kelly"), DOCCS Director of the Crisis Intervention Unit ("CIU"), Directive 4202 § N.2.b neither permits dhikr beads to be worn nor left unattended. Kelly Declaration ¶¶ 2, 4-6. As Kelly explains, and Plaintiff does not dispute, Directive 4202 § N.2.b promotes a legitimate penological and security interests within DOCCS facilities because beads can be used as a signal of identity, unity and authority by various gangs and members, such that wearing prayer beads may be used to signal affiliation with or rank or status within a gang, or to foster nonverbal communication. *Id.* ¶¶ 9-12. Further, leaving any personal items unattended within

---

[20] Kaczor Declaration Exh. D (Dkt. 125-7 at 146-154).

common areas can lead to theft or allegations of theft and result in retaliation or violence, *id.* ¶ 8, and beads may also be used as weapons. *Id.* ¶ 13. Accordingly, even if Friot confiscated Plaintiff's prayer beads, a fact Friot vehemently denies, Friot Declaration ¶ 19 ("I also understand that inmate Ayers claims that I confiscated his religious beads. This is blatantly false. I do not even know what Dhikr beads look like and have never had any conversations with Plaintiff about them."), such confiscation, as alleged by Plaintiff, occurred in accordance with Directive 4202 § N.2.b, and Plaintiff does not argue otherwise nor does Plaintiff challenge Directive 4202 as unconstitutional. Further, although Plaintiff maintains that upon confiscating the prayer beads, Friot was required to complete a form indicating such confiscation, Friot's failure to complete such form is consistent with Friot's assertion that he did not confiscate the prayer beads. Nor does Plaintiff allege any facts on which it may be concluded that Friot knew to whom the beads belonged; rather, Plaintiff's additional assertion that the prayer beads were confiscated after Plaintiff left them unattended while Plaintiff and two other inmates went into a nearby bathroom to perform ablution, Second Amended Claim ¶ 18, gives credence only to a determination that Friot would not have known to whom the prayer beads belonged.

Defendant's argument that the confiscation of Plaintiff's prayer beads did not substantially burden Plaintiff's exercise of his NOI faith, Defendant's Memorandum at 22-24, does not require the court to resolve issues of fact not appropriate for summary judgment. Specifically, Plaintiff gave deposition testimony that he could have purchased another set of prayer beads but chose not to do so only because the prayer beads Friot allegedly confiscated were of sentimental value as a gift from Muhammad,

Plaintiff's Dep. Tr. at 161, and that Plaintiff did not obtain another set of prayer beads until 2013, *id.* at 124, but is unable to explain why he waited so long to do so if such beads had any substantial significance to a basic tenet of the NOI religion. *Id.* at 126. This testimony is consistent with Plaintiff's acknowledgement that Plaintiff had everything he needed to practice his faith. *Id.* at 102. Thus no material issue of fact pertinent to Plaintiff's First Amendment claim based on the supposed confiscation of Plaintiff's prayer beads requires trial.

Defendant's remaining alternative argument in opposition to summary judgment on his prayer beads claim, however, does not support summary judgment, *i.e.*, Defendant's argument that Plaintiff's prayer beads do not appear on the personal property transfer Form # 2064 when Plaintiff was temporarily transferred from Elmira to Attica for the period September 28, to October 16, 2009. Defendant's Memorandum at 21-22. In opposition, Plaintiff argues that it is not uncommon for prayer beads to be wrapped inside a prayer rug or be inside a religious book and thus missed by the prison official completing Form # 2064. Plaintiff's Response at 13 (citing Plaintiff's Dep. Tr. at 95). Although Form # 2064 does not indicate Plaintiff had a prayer rug, it does show Plaintiff transferred two religious books inside which the prayer beads could have been stowed. Further, Defendant's argument that because Plaintiff maintains he received the prayer beads as a gift from Muhammad, the outside NOI representative at Sing Sing where Plaintiff was housed from 1997 to 1999, the prayer beads should have been listed on Form # 2064 completed in relation to Plaintiff's temporary relocation to Attica in 2009, Defendant's Memorandum at 21 & n. 16, blinks at the fact that no copy of Form # 2064 accompanying Plaintiff's transfer from Sing Sing to Elmira was submitted to

support Defendant's assertion that Plaintiff never possessed the prayer beads. Accordingly, this alternative argument does not support summary judgment.

Defendant's Motion should be GRANTED on Plaintiff's First Amendment claim based on the confiscation of his prayer beads.

To summarize, because Plaintiff has failed to offer any proof, as is his burden, establishing an issue of fact that either his maintaining the religious clerk position or that his possession of the prayer beads was required as a basic tenet of his NOI religion, summary judgment should be GRANTED in Defendant's favor on Plaintiff's First Amendment free exercise claims.


## **CONCLUSION**

Based on the foregoing, Defendant's motion (Dkt. 125) should be GRANTED; the Clerk of Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       June 12th, 2020
             Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an</u>**

**<u>extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:          June 12th, 2020
                Buffalo, New York